741 So.2d 949 (1999)
Lee Terry GOLDMAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00287-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*950 Richard Flood, Ridgeland, Attorney for Appellant.
Office of the Attorney General by Charles Maris, Jr., Attorneys for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
PAYNE, J., for the Court:
¶ 1. Lee Terry Goldman was indicted for and convicted of burglary of a business in the Circuit Court of Madison County. He appeals asserting the trial court erred in: 1) not granting a directed verdict, 2) refusing jury instructions that he requested, and 3) granting jury instructions to which he had objected.

FACTS
¶ 2. On June 29, 1996, a Ridgeland, Mississippi police officer, Tim Howell, arrested Goldman and an accomplice after he saw them removing items from a Goodwill Industries (Goodwill) box in the parking lot of Northpark Mall and placing them in the trunk of Goodman's automobile. Included among the items seized from Goldman's vehicle were: 29 pairs of pants, 51 shirts and tee-shirts, 4 women's blouses, 4 *951 pairs of shorts, 10 pairs of shoes, 13 pairs of socks, 6 sheets, 2 pillow cases, 60 linen napkins, baby clothes, a duffle bag, a picture frame and an ironing board.

1. DIRECTED VERDICT
¶ 3. Goldman contends the trial court should have granted a directed verdict because the State failed to establish the elements of burglary of a business as established by Miss.Code Ann. § 97-17-33 (Rev.1994), which provides:
[E]very person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit or transportation, with intent to steal therein, or to commit any other felony....[1]
Specifically, Goldman contends that the State failed to show either that he gained entry into the Goodwill box by "breaking" into it or that the Goodwill box fit the definitions of a building or any other statutorily enumerated place where a business burglary could occur.

1a. Whether The Evidence Supported A Finding Of Breaking and Entering
¶ 4. The Goodwill box had two openings. One was a heavy steel door which was still secured by a lock when Goldman was arrested. The other opening was a two foot in diameter "chute," which was located approximately five to six feet from the ground on one side of the box. This chute was used by people donating items who would push items upward for approximately one foot until they would drop into the box. Goldman admits that his accomplice entered the box by crawling up the "chute," but argues that merely crawling inside the box does not constitute "breaking."
¶ 5. As a matter of law, this argument is simply incorrect. As the supreme court explained in Alford v. State, 656 So.2d 1186, 1189-90 (Miss.1995), "any effort" expended to enter another's property to commit a crime constitutes a breaking:
Whether Afford came through the front door by use of force or the rear door avails Afford little for argument purposes. Any effort, however slight, such as the turning of a door knob to enter, constitutes a breaking, as was readily admitted by Afford in his brief.
In Newborn[Newburn] v. State, 205 So.2d 260 (Miss.1967), the Court further stated that "we have repeatedly held that evidence of the slightest force necessary to open an entrance into a dwelling house is sufficient to satisfy the essential element of breaking under the charge of burglary of an inhabitant's dwelling." Id. at 263; see also Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965).
In Smith v. State, 499 So.2d 750, 752 (Miss.1986), the Court stated that "breaking" is "any act or force, however, slight, `employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.' ".Id. quoting State v. Jolly, 297 N.C. 121, 254 S.E.2d 1 (1979). Without a doubt, Afford entered the trailer unannounced, whether he came in the back door that may or may not have been locked, or whether he tried or did enter the front door that showed evidence of being pried open. Afford is clearly guilty of a breaking and entering.
Alford, 656 So.2d at 1186. See also Templeton v. State, 725 So.2d 764 (¶ 2) (Miss. 1998); Branning v. State, 222 So.2d 667, 669 (Miss.1969).
*952 ¶ 6. There can be no factual question whether Goldman's accomplice exerted some "effort" in climbing up through the narrow chute into the Goodwill Box. The question then is whether that effort was consistent with the definition of "force."
¶ 7. The analysis starts with the purpose of the "force" requirement in the first place. If the occupant has left a door opened wide enough for someone to gain entry without enlarging the opening, under common law that was either an implied invitation or such an occupant was not entitled to insist on the severity of the penalty for the crime of burglary if the dwelling was not better secured. WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.13(a) (1986):
In requiring a breaking the law was not asking that the occupants of a dwelling turn their home into a fortress, but only that they not leave openings which would "invite" another to enter. For this reason the breaking need not involve force or violence, for once the house was closed the law protected it.
The law was not ready to punish one who had been "invited" in any way to enter the dwelling. The law sought only to keep out intruders, and thus anyone given authority to come into the house could not be committing a breaking when he so entered.
Id. Though some of the limitations of common law have been relaxed by statute and otherwise, such as no longer to limit burglaries to dwellings or to nighttime and not requiring that a door be totally closed if the opening is too slight for entry, the general outline of the offense remains as just stated.
¶ 8. What this means is that the structure generally must be closed. Otherwise the entry is only a trespass, not a "breaking" and a burglary. It does not matter that the opening used is not intended for human access. The supreme court alluded to this when discussing a related concept of "constructive breaking," which is a criminal's rushing into a structure uninvited when another person with authority opens the door:
In State v. Jolly, 297 N.C. 121, 254 S.E.2d 1 (1979), the defendant was convicted of first degree burglary and armed robbery and appealed to the Supreme Court of North Carolina. The court defined breaking as "... any act or force, however, slight, `employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.'"
Smith v. State, 499 So.2d 750, 752 (Miss. 1986). See also Templeton v. State, 725 So.2d 764, 766 (Miss.1998); Alford v. State, 656 So.2d 1186, 1189-90 (Miss.1995).
¶ 9. Even though entry is through an "unusual place of ingress," there still must be force. A "breaking" when a window was used has been explained this way:
[I]n the Clanton case the owner of the building testified that he did not know whether the window through which Clanton entered was closed. The owner merely said that it was the usual practice to close the window before leaving at night. In that case the sheriff testified that when the other workers at the robbed service station were questioned they were not able to say whether or not the window was closed before they left work the evening that the goods were stolen. We said in the Clanton case: "In other words, there is no testimony that it was necessary to raise the window to effect the entrance into the building."
Rankin v. State, 214 So.2d 811, 813 (Miss. 1968), discussing Clanton v. State, 211 Miss. 568, 572, 52 So.2d 349, 350 (1951).
¶ 10. Such rules remain based on the common law requirement that an occupant must close his structure before entry by an unauthorized person would constitute a burglary. However, an occupant was never required to seal every opening. For example, entry through a chimney was considered a burglary because the structure was "as closed as possible and the *953 opening could not be considered as inviting an offense." LAFAVE & SCOTT, SUBSTANTIVE CRIMINAL LAW at § 8.13(a).
¶ 11. It is that corollary to the general rules requiring "force" that is applicable here. Like a chimney, the opening into this structure was necessary in order for it to function as intended and could not reasonably be viewed as intended for a person's entry. Such an opening does not constitute a failure by an owner to secure his structure and therefore is not an implied invitation as is an open door or even an open window. The use of the narrow opening was as much a burglary as an entry through a chimney or any other space whose usage required that it be open continuously. Using such an opening constitutes a "breaking" into an adequately closed structure and is a burglary, not just a trespass.
¶ 12. Some of the distinctions seem divorced from common sense. It is hard to consider a criminal's entry through an open window as less culpable than his entry through a door that was somewhat ajar but which had to be pushed open two additional inches. Another way to define "breaking" would be the use of any entrance that was not reasonably viewed as intended for human access nor easily used for that purpose. Therefore the normal open window, whether on the first floor or certainly if higher on the structure such as to require a ladder or other means to enter, would not be an "invitation." Moreover, if the open door was on the second floor of a structure, accessible only by climbing up to the balcony onto which the door opens, use of it also would be a "breaking."
¶ 13. The facts before the jury in this case indicated that Goldman crawled into a two-foot diameter opening some five to six feet above the ground into a chute, and crawled through the chute for approximately one-foot to enter the Goodwill Box. This opening was not designed for human entrance, but for individuals to push donations through into the Goodwill Box. We find this was credible evidence upon which a jury could find Goldman broke into the Goodwill Box. A motion for a directed verdict is properly denied when credible evidence could lead reasonable jurors to return the verdict. May v. State, 460 So.2d 778, 780 (Miss.1984). Therefore, this issue is without merit.

1b. Whether The Evidence Supported A Finding That The Goodwill Box Was A Structure Encompassed Under Miss.Code Ann. § 97-17-33 (1972)
¶ 14. Goldman contends he could not have been convicted of burglary of a business because the Goodwill box is not a "shop, store, booth, tent, warehouse, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer" as enumerated by Miss.Code Ann. § 97-17-33 (Rev.1994). Goldman argues that the Goodwill box could not be considered any of these enumerated places because it was portable, was not designed to be occupied, and did not require a building permit. He also he argues that to construe the Goodwill box as one of these enumerated places "would allow the State to expand the statute to cover this box would bring every BFI trash dumpster under the statute."
¶ 15. These arguments are not persuasive. Several of the statutorily enumerated places are mobile and do not require a building permit, such as booths found at fairs, tents, boats, railroad cars and vehicles. Nor are warehouses necessarily designed to be occupied. Nor is a Goodwill box analogous to a dumpster because the same statute enumerating these places also requires them to be used to keep goods or merchandise for use, deposit or sale, which is not the case with trash dumpsters.
¶ 16. It is certainly true, however, that the supreme court has not considered whether a Goodwill box is a place where a *954 burglary can occur. However, a variety of cases have considered burglary of storehouses, warehouses and sheds. See, e.g., Traylor v. State, 582 So.2d 1003, 1004 (Miss.1991) (burglary of shed); Ferguson v. State, 507 So.2d 94, 96 (Miss.1987) (post conviction relief review of attempted burglary of warehouse); Hoke v. State, 232 Miss. 329, 330, 98 So.2d 886 (1957) (burglary of warehouse); Andrews v. State, 220 Miss. 28, 31, 70 So.2d 40, 41, (1954) (burglary of warehouse); Gross v. State, 191 Miss. 383, 2 So.2d 818, 819 (1941) (burglary of storehouse); Colburn v. State, 175 Miss. 704, 166 So. 920, 921 (1936) (burglary of storehouse). All of these involve goods or property that were stored in anticipation of them being safely kept, and they illustrate that the essence of burglary is when one enters into property not his own in order to commit a felony. See also Mitchell v. State, 720 So.2d 492, 494-95 (Miss.Ct.App.1998).
¶ 17. As in the above cited cases, the Goodwill box was used to store property in anticipation of it being safely kept. Darbey Sowell, President of Goodwill, testified that the Goodwill box was used to collect and store goods donated to Goodwill until his employees opened the box and took these goods to Goodwill's central location to be sold. As such, the Goodwill box functioned just as the places where burglaries occurred in all of the cases cited above. Sowell additionally testified that the box cost approximately $1,000, was made of heavy gauge steel weighing in excess of 600 pounds, stood seven feet high and was five feet wide and five feet long. The Goodwill box was more substantial than many trailers, booths or tents all of which are enumerated by Miss.Code Ann. § 97-17-33 (Rev.1995). Some trailers and/or booths are towed behind vehicles for use in agriculture and at fairs, and they are statutorily enumerated places where burglaries may occur, yet they can also be less stable and permanent than was the Goodwill box. Many booths are placed in parking lots or alongside service stations to sell a variety of items such as flavored ice and other foods, and many of these are locked and left during the winter, yet they too are places where burglaries may occur even though they may be checked by their owners less frequently than the Goodwill box.
¶ 18. In short, Sowell's testimony gave a factual basis for the jury to find that the Goodwill box came within the statutorily enumerated places which include booths, warehouses and trailers. A motion for a directed verdict is properly denied when credible evidence could lead reasonable jurors to return the verdict. May v. State, 460 So.2d 778, 780 (Miss.1984). See also Jenkins v. State, 483 So.2d 1330, 1332 (Miss.1986); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). There was no error.

2. Denial of Jury Instruction D-13
¶ 19. Goldman requested jury instruction D-13, and it was denied without any discussion either as to what Goldman based it upon or why the trial court denied it. D-13 provided:
The Court instructs the Jury that under the law no juror has the right to convict, nor should convict, LEE TERRY GOLDMAN upon mere suspicion regardless of how strong the suspicion may be or simply because there may be a preponderance of the evidence against the defendant, nor merely because there is, or may be, a reason to suspect the defendant is guilty. The Court now instructs you, ladies and gentleman of the Jury, that suspicion, no matter how strong or how convincing, never rises to the dignity of evidence under the law, and before you on your oath as Jurors can lawfully 381 So.2d 1019 convict LEE TERRY GOLDMAN you must be convinced upon the evidence, and the evidence alone, that LEE TERRY GOLDMAN is guilty beyond a reasonable doubt.
¶ 20. So long as a jury is fully instructed, no error attaches to a refusal to give repetitive instructions. Hull v. State, 687 So.2d 708, 722 (Miss.1996). See also *955 Ragan v. State, 318 So.2d 879, 881 (Miss. 1975); Anderson v. State, 381 So.2d 1019, 1023-24 (Miss.1980).
¶ 21. The following instructions were given. Jury instruction 1 instructed the jurors that they were to determine the credibility of the evidence and that the verdict should be based upon the evidence rather than speculation or conjecture. Jury instruction 4 instructed the jurors as to the presumption of innocence and standard of proof beyond a reasonable doubt. Jury instruction 5 instructed the jurors that if the proof did not rise to beyond a reasonable doubt they should acquit. Jury instruction 6 instructed the jurors both as to the elements of burglary of a business and that they had to find all elements present and proven beyond a reasonable doubt. These instructions set forth all the information sought to be conveyed by jury instruction D-13. As the jury was fully and correctly instructed, there was no error.

3. Granting Jury Instructions 6 and 7
¶ 22. Goldman contends that the trial court erred in giving jury instruction 6. This instruction provided:
The Defendant, Lee Terry Goldman, has been charged by an indictment in this case with the crime of business burglary. If you find from all of the evidence, beyond a reasonable doubt, that the Defendant, Lee Terry Goldman, did willfully, unlawfully, feloniously and burglariously:
1. on or about June 29, 1996, in Madison County, Mississippi,
2. break and enter a Goodwill Industries outbuilding, wherein goods, merchandise or other valuable things being the property of Goodwill Industries were kept for sale or use,
3. with the intent to commit a larceny therein, then you shall find the Defendant, Lee Terry Goldman, guilty as charged.
If the State has failed to prove any one or more of the above listed elements, then you shall find the Defendant, Lee Terry Goldman, not guilty.
¶ 23. In part, Goldman's objection to jury instruction 6 is the same as his argument raised in the first assignment of error that the Goodwill box did not fit the places where burglaries of a business could occur as statutorily enumerated by Miss. Code Ann. § 97-17-33 (Rev.1994), and as such this instruction was not supported by the evidence. However, paragraph two of jury instruction 6 explicitly instructed the jury that it had to find that the Goodwill box was an "outbuilding" in order to convict. Therefore in this assignment of error, Goldman argues that the Goodwill box cannot be an "outbuilding," regardless of whether it is any of the other places enumerated by Miss.Code Ann. § 97-17-33 (Rev.1994).
¶ 24. Goldman waived this issue by failing to object to jury instruction 6. Any error asserting that an instruction was improperly given must have been contemporaneously objected to in order to preserve the error on appeal. Haddox v. State, 636 So.2d 1229, 1240 (Miss.1994). See also Ballenger v. State, 667 So.2d 1242, 1256 (1995). Moreover, the gravamen of Goldman's argument is really that throughout the trial he contended, through counsel, that this crime was in fact either petit or grand larceny rather than burglary. That is, Goldman's defense did not counter the State's evidence showing that he was arrested during the act of putting Goodwill property into his car, but he argued through counsel that the requisite breaking and entering of burglary was not present in this crime. However, he never requested a lesser-included-offense instruction. Rather, he simply argued the elements of burglary were not met. That was a strategic decision, but in making it he chose to depend upon the jury finding no crime present when Goldman was apprehended literally with the goods in his hands, rather than requesting the lesser-included-offense instruction on either petit or grand larceny to give the jury the opportunity *956 to return a guilty verdict upon the less serious offense.
¶ 25. Additionally, even if this assigned error had not been waived, its merits would be questionable if they were considered. An "outbuilding" is "a building separate but associated with a main building." AMERICAN HERITAGE DICTIONARY 969 (3d ed.1993). Moreover, in the context of construing building covenants the supreme court has found "shed" to be roughly synonymous with "outbuilding." Stokes v. Board of Directors of La Cav Improvement Co., 654 So.2d 524, 529 (Miss.1995).
¶ 26. In order to prevail upon a claim for a directed verdict, an appellant faces the burden of allowing the State all reasonable inferences that can be drawn from the evidence. May, 460 So.2d at 780. See also Jenkins, 483 So.2d at 1332; Groseclose, 440 So.2d at 300. In this case, the "box" in question had four sides, a floor and a roof. It stood seven feet high and five foot square in diameter. It was made of steel and weighed 600 pounds. The purpose for the "box" was to hold goods until they could be transported to Goodwill's central location. Yet, Goldman argues that "[i]t is obvious from common sense that a box is not an `outbuilding.'" It is for the jury to decide conflicts in the evidence. Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979). Frankly, the "box" was more substantial than many small buildings and sheds, and despite Goldman's argument to the contrary, it is not "obvious" that the jury could not find that the Goodwill box could be an "outbuilding" in the same manner as is a shed. Goldman chose to chance either conviction or acquittal upon the jury finding the Goodwill box was not an outbuilding. Having been convicted, he now asks that an appellate court should take the decision from the jury that heard and considered the issue. Such is not the role of an appellate court. The jury's verdict was supported by the evidence, and this issue has no merit.
¶ 27. Lastly, Goldman argues that jury instruction 7(S-2) should not have been given because it was a "conspiracy" instruction, and no conspiracy was alleged. The instruction read:
The Court instructs the jury that if you find that the crime of business burglary was committed in this case; each person who was present, consenting to the commission of the crime and doing any act with aided, assisted or encouraged the crime, is guilty to the same extent as if he committed the whole crime.
Conspiracy is a crime separate and distinct from burglary. See Miss.Code Ann. § 97-1-1 (Rev.1994). In the present case, the State sought to prove Goldman acted in concert with another person and thus was guilty as a principal under the theory of aiding and abetting. The fact that Goldman may also have "conspired" with some other person to break into the Goodwill box is irrelevant to the aiding and abetting issue that was actually presented to the jury.
The complaint that the jury was charged on the crime of conspiracy may be quickly disposed of. One who is an accessory before the fact or one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony.
Malone v. State, 486 So.2d 360, 364 (Miss. 1986).
¶ 28. Stated alternatively, if two or more persons enter into a combination or confederation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of law, the act of all. Shedd v. State, 228 Miss. 381, 386, 87 So.2d 898, 899 (1956). Further, the language of the jury instruction 7 has been approved in other cases where the issue was whether one is aiding and abetting in the commission of a crime was guilty and could be punished as a principal. See, e.g., Hoops v. State, 681 So.2d 521, 533 (Miss.1996). *957 Therefore, the trial court did not err in granting jury instruction 7.
¶ 29. In sum, none of the assigned errors have merit, and the judgment of the Madison County Circuit Court is affirmed.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF BURGLARY OF A BUSINESS AND SENTENCE OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, AND THOMAS, JJ., CONCUR.
IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.
IRVING, J., dissenting:
¶ 31. With great deference to the reasoning and studied decision of my colleagues, I find that I must respectfully dissent from the majority's opinion on the ground that the State failed to prove an essential element of the crime of burglary, namely, that entry into the Goodwill box was gained by "breaking" into it.
¶ 32. Black's Law Dictionary defines breaking as:
Forcibly separating, parting, disintegrating, or piercing any solid substance. In the criminal law as to housebreaking and burglary, it means the tearing away or removal of any part of a house or of the locks, latches, or other fastenings intended to secure it, or otherwise exerting force to gain an entrance, with criminal intent; or violently or forcibly breaking out of a house, after having unlawfully entered it, in the attempt to escape. Actual "breaking" involves application of some force, though the slightest force is sufficient; e.g. an actual "breaking" may be made by unloosening, removing or displacing any covering or fastening of the premises, such as lifting a latch, drawing a bolt, raising an unfastened window, or pushing open a door kept closed by its own weight. Even the opening of a closed and unlocked door or window is sufficient to constitute a "breaking" within terms of statute, so long as it is done with a burglarious intent. (citations omitted).
¶ 33. The Mississippi Supreme Court in Winston v. State, 479 So.2d 1093, 1095 (Miss.1985) stated that ... "the crime of burglary has two essential elements, the unlawful breaking and entering and the intent to commit some crime once entry has been gained." The court further stated:
Miss.Code Ann. § 97-17-21 (1972), as amended, recites the essentials of breaking and entering in Mississippi:
... by forcibly bursting or breaking the wall, or an outer door, window or shutter, of a window of such a house, or the lock or bolt of such door, or the fastening of such window or shutter, or by breaking in in any other manner .... [emphasis added]. The key word and phrase relevant to the case at bar are "forcibly", and "or by breaking in in any other manner." Even a cursory examination of case law shows that the force used to make an entry may be slight. In Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965), this Court noted that:
[t]he breaking may be established by proof of the slightest use of force in entering. "By breaking is meant any act of force, regardless of how slight, necessary to be used in entering the buildingthe turning of a knob, a slight push to further open the door, the rising of a latchthese and like acts are sufficient." Gross v. State, 191 Miss. 383, 2 So.2d 818 (1914)[(1941)].
Id. at 1096 (emphasis added).
¶ 34. In Newburn v. State, 205 So.2d 260, 263, (Miss.1967), the Newburn Court instructed:

*958 We have repeatedly held that evidence of the slightest force necessary to open an entrance into a dwelling house is sufficient to satisfy the essential element of breaking under the charge of burglary of an inhabitant's dwelling. See Fondren v. State, 253 Miss. 241, 175, So.2d 628 (1965); 12 C.J.S. Burglary § 3b (1938) (emphasis added).
¶ 35. The majority cites Alford v. State 656 So.2d 1186 (Miss.1995) for the proposition that `"any effort' expended to enter another's property to commit a crime constitutes a breaking" I do not read Alford to stand for such broad proposition. In Alford, the testimony was conflicting on the question of how the defendant had entered the house which was the subject of the burglary. The State's proof was that the back door to the house was always locked and the front door had scratch marks and pry marks on it. The defendant testified that the back door was not locked and he stuck his head in, picked his feet up and went on in. He never testified that the back door was opened. In resolving the "no breaking" argument against the defendant, the Alford court taught: "Whether Alford came through the front door by use of force or the rear door avails Alford little for argument purposes. Any effort, however slight, such as the turning of a door knob to enter, constitutes a breaking. ..." Id. at 1189. (emphasis added).
¶ 36. In Smith v. State, 499 So.2d 750 (Miss.1986), the court found evidence sufficient to sustain a finding of "breaking" where, according to the State's proof, Smith shot his victim on the outside of a house, followed the victim through a door of the house and pointed his gun at the victim. The gun was grabbed by one Helen Erckhart, and she and Smith tussled over the gun before she was able to push Smith back out the door. Smith then knocked her down and kept hitting her until he had control over the gun. He then went back in the house and shot two more times before leaving and getting back in his truck. The Smith Court, discussing State v. Jolly, 297 N.C. 121, 254 S.E.2d 1 (1979), noted:
In the case sub judice the jury could have and evidently did believe Erckhart's testimony that Smith forcibly entered her home through the front door over her protest after overpowering her by knocking her down as she tried to block his way and prevent his entry.
Id. at 753.
¶ 37. Here, the proof is that Goldman's accomplice climbed up the chute and entered through a two-foot opening. There is no proof that Goldman or his accomplice exerted any force to open or widen the two-foot opening in any way so as to facilitate entrance or gain passage through the opening. My colleagues in the majority say, "There can be no factual question whether Goldman's accomplice exerted some `effort' in climbing up through the narrow chute into the Goodwill Box." I assume the majority means that the effort exerted was climbing up the chute and entering the opening at the top of the chute. The majority then postulates: "The question then is whether that effort was consistent with the definition of `force'." In my opinion, the majority confuses force to arrive at an opening or entrance with force used to effectuate passage through an opening or entrance. In the burglary context, exerting effort, or force as the majority states it, to arrive at an unobstructed opening to obtain entrance is not synonymous with using force to widen the opening so that entrance made be gained. Force in the burglary context is irrelevant unless that force is used to effectuate entrance through an obstructed passageway. In this case, there just simply is not a scintilla of evidence that Goldman used any force to widen the opening of the chute in order to gain entrance into the interior of the Goodwill box. As long as there is no force used to effectuate or obtain passage through an existing opening, there is no breaking, and since there was no impediment that had to *959 be moved in order to allow passage through the chute opening, there was no breaking.
¶ 38. Faced with the absence of evidence to support a breaking of the unobstructed opening in the chute, the majority resorts to the common law and discusses the development of the rationale for the requirement that a breaking had to occur at common law before one could be found guilty of burglary. Specifically, the majority states:
Such rules remain based on the common law requirement that an occupant must close his structure before entry by an unauthorized person would constitute a burglary. However, an occupant was never required to seal every opening. For example, entry through a chimney was considered a burglary because the structure was "as closed as possible and the opening could not be considered as inviting an offense." LAFAVE & SCOTT SUBSTANTIVE CRIMINAL LAW at § 8.13(a).
It is that corollary to the general rules requiring "force" that is applicable here. Like a chimney, the opening into this structure was necessary in order for it to function as intended and could not reasonably be viewed as intended for a person's entry. Such an opening does not constitute a failure by an owner to secure his structure and therefore is not an implied invitation as is an open door or even an open window. The use of the narrow opening was as much a burglary as an entry through a chimney or any other space whose usage required that it be open continuously. Using such an opening constitutes a "breaking" into an adequately closed structure and is a burglary, not just a trespass.
Majority op. at 952-53.
¶ 39. My response to the majority's common law fill-in-the-gap argument is two-fold. First, "To the extent that statutes, by their terms and necessary implications, and the common law are not repugnant, they co-exist and will be given effect." Clark v. Luvel Dairy Products, Inc., 731 So.2d 1098 (Miss.1998) However, Goldman was charged with a statutory business burglary, a burglary not known to the common law. Therefore, it is somewhat difficult for me to see how resort to the common law is appropriate in the discussion of one of the elements of the crime with which Goldman was charged when such a crime did not exist at common law. Nevertheless, since "breaking" was an element of common law house burglary, and "breaking" is an element of the statutory business burglary with which Goldman was charged, perhaps a discussion of common law "breaking" in the house burglary context is appropriate.[2] However, I find the chimney analysis unconvincing. First of all, an opening, which is located some five to six feet from the ground, is hardly the equivalent of a house chimney. This should be painfully clear when one considers the fact that such height is less than the height of many persons, not including their reach.
¶ 40. Secondly, I cannot accept as tenable the majority's implicit argument that the Goodwill box was made as secure as it could be without defeating or compromising the purpose for which it was being used. While it is patently obvious why a chimney needs to remain open at the top, such is not the case with a Goodwill box. A swivel door covering the opening in the Goodwill box would allow for the placement of clothing and other items in the box while at the same time prevent entrance without a concomitant breaking. With an opening so readily within the reach of so many average persons, I cannot rationalize that the Goodwill box was as secure as it could be and that an unauthorized entrance into it, as is the case here, constitutes a "breaking" within the *960 meaning of that term at common law. This is especially true when one considers the fact that the very purpose of the box was to attract persons to it. That a thief as well as an altruist would be attracted to the Goodwill box appears self-evident to me. Equally self-evident to me is the fact that such an accessible opening would be as much an invitation to the criminally disposed to enter as would an open door or window.
¶ 41. For certain, Mr. Goldman is guilty of larceny, and I would reverse and remand to the trial court for sentencing under our larceny statute.
COLEMAN, J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] While not bearing upon the present decision, this code section was amended in 1997 to prescribe heightened penalties for breaking and entering into places of worship. Miss. Code Ann. § 97-17-33 (1998 Supp.)
[2] See Eastwood v. State, 415 So.2d 678, 678 (Miss.1982) holding that in the absence of a statutory definition of any element of an offense, the common law definition of that element applies.