KING, P.J,
for the Court:
¶ 1. Adrian Jones (Jones) perfected this appeal from an order of the Circuit Court of Jones County, Mississippi which overruled his motion for judgment notwithstanding the verdict. Jones, convicted of kidnaping, was given a life sentence in the custody of the Mississippi Department of Correction. Jones alleges the following errors which we recite verbatim: 1) The trial court committed reversible error in refusing the defendant’s requested instruction of how the jury was to view the testimony of the alleged accomplice. 2) The trial court committed reversible error in refusing requested instruction D-7. 3) The trial court committed reversible error in refusing defendant requested instruction D-9. and 4) The trial court committed reversible error in allowing the jury to deliberate further and change their verdict after they had brought it out into open court and announced it.
FACTS
¶ 2. On February 27, 1998, in a two-count indictment, the Grand Jury of Jones County charged Jones, Terry Jones, Johnny Collins (Collins), Stacy Stevens (Stevens), and Wanda Cooper (Cooper) with kidnaping and murder. At his arraignment, Jones entered a plea of not guilty to all charges. Jones moved the court for a severance from his co-defendants. The court granted Jones’s motion, and trial of this matter began on July 27,1998.
*689 ¶ 3. The State’s witnesses included: co-indictee Collins; Captain Lafayette Nel-. son, of the Jones County Sheriffs Department; Mel Riley, chief investigator of the Jones County Sheriffs Department; and Dr. Steven Hayne, who performed the autopsy on the deceased.
¶ 4. Collins testified that on the evening of November 20, 1997, he was at the home of Grace Jones at 1222 Anderson Street. Also present were Terry Jones, Adrian Jones, Stacy Stevens, Wanda Cooper, Patrick Jones, and Willie Jones. Between the hours of 2:00 A.M. and 3:00 A.M. a man, later identified as Edward Smith (Smith), approached the group and asked to buy cocaine. To pay for his purchase, Smith offered a check from Wayne Farms, payable to Edward Smith. Because Smith was unknown, the group declined that form of payment. Someone said that Smith was an undercover police officer, at which point, Terry Jones then said to “get” Smith. At that point, everyone began beating Smith.
¶5. The group took Smith across the street to an empty lot and laid him on the ground. In order to move Smith from the vicinity of Terry Jones’s mother’s house, the group placed the unconscious Smith in the trunk of Cooper’s car. The parties then began to drive away from Anderson Street toward an unspecified destination.
¶ 6. At some point, Cooper turned the car around and headed back toward Laurel. Smith, who was still in the trunk of the car, woke up and began kicking and screaming. Suddenly, the car stalled, and would not restart. The occupants then pushed it to the side of the road. Smith was removed from the trunk and placed on the side of the road. Believing the car to be out of gas, they stopped a passing motorist who took Cooper to get gas and brought her back to the stalled car.
¶ 7. After Cooper returned with the gas, the car still failed to start. Terry Jones, Stevens, and Adrian Jones returned to the side of the road where Smith was lying. Terry Jones, Stevens and Adrian Jones then poured gas on Smith and set him on fire.
¶ 8. Captain Lafayette Nelson (Nelson) of the Jones County Sheriffs Department testified that he received a call concerning three bodies on the side of the road. After receiving the call, Nelson drove to Luther Hill Road. Nelson parked his patrol car in front of the parked car. As he walked toward the car, he noticed what appeared to be a body in the ditch. Nelson retened to his patrol car and radioed for assistance.
¶ 9. Mel Riley, chief investigator of the Jones County Sheriffs Department, arrived on the scene at approximately 6:40 A.M. He collected evidence from the scene and packaged it for processing. Riley testified that, as a result of his investigation, arrests were made for the murder of Smith.
¶ 10. Dr. Steven Hayne performed the autopsy on Smith. He testified that Smith received a non-lethal stab wound to the back and numerous cuts and bruises to his face and body. Dr. Hayne testified that Smith suffered flash burns and charring all over his body. Dr. Hayne determined that the cause of death was the result of extensive thermal burns, swelling of the larynx and smoke inhalation.
¶ 11. The State rested after Dr. Hayne’s testimony. Jones chose not to testify on his own behalf. After the defense rested, the jury received instructions and began their deliberations. After deliberating, the jury was unable to reach a verdict on the murder charge. The jury did, however, find Jones guilty of kidnaping and sentenced him to life in the custody of the Mississippi Department of Corrections. Jones moved for a new trial or, in the *690 alternative, for a judgment notwithstanding the verdict. The trial court overruled both motions. Aggrieved by the court’s ruling, Jones perfected this appeal.
I.
The trial court committed reversible error in refusing the defendants requested instruction of how the jury was to view the testimony of the alleged accomplice.
¶ 12. Jones argues that refusal of jury instruction D-ll amounted to reversible error. Jones contends Collins’s testimony was self-contradictory and proposed jury instruction D-ll on accomplice testimony would have properly instructed the jury concerning Collins’s testimony. Instruction D-ll read:
You are hereby instructed that Johnny M. Collins testified in this case and that is known to the law as an accomplice. In other words, he was indicted as a co-defendant in this case along with the Defendant and it is undisputed that in return for his testimony the State agreed to recommend for him a lesser penalty than could have been imposed upon him by law. The testimony of an accomplice is to be viewed with caution and care and to be disregarded unless you find it to be absolutely true.
¶ 13. The State objected to the proposed instruction arguing that it did not correctly state the law because it required the jury to disregard the testimony unless it was found to be absolutely true. The State offered instead jury instruction S-7 which read:
Johnny Collins is an accomplice in this case, and the testimony of an accomplice is to be considered and viewed with great care, caution and suspicion. You may give it such weight and credit as to which you deem it to be entitled.
If the testimony of a co-conspirator is used and there is an evidentiary basis for a cautionary instruction, the trial court should not hesitate to give a cautionary jury instruction regarding the testimony of a co-conspirator. Derden v. State, 522 So.2d 752, 754 (Miss.1988). “Clear law in the State of Mississippi is that the jury is to regard the testimony of co-conspirators with great caution and suspicion.” Id. However, this does not require a finding of absolute truth before the testimony of an accomplice can be believed as argued by Jones. Jury instructions must correctly state the law. Munford, Inc. v. Fleming, 597 So.2d 1282, 1286 (Miss.1992). The granting of an instruction that misstates the law is error. Id. The trial court was correct in denying instruction D-ll because it did not properly instruct the jury on the applicable law.
II.
The trial court committed reversible error in refusing requested instruction D-7.
¶ 14. Jones argues that no other instruction properly advised the jury that the verdict must be unanimous. By refusing instructions D-7, Jones argues the trial court committed reversible error. Instruction D-7 read:
The Court instructs the Jury that under the law it is required that each and every juror agree upon the verdict. In ' other words the verdict, before it can be brought into the courtroom as the verdict of the jury, must be agreed and consented to by all twelve (12) of the members of the jury.
¶ 15. The record indicates that the court properly advised the jury that the verdict must be unanimous. Instruction C-l provided:
*691 The verdict of the jury must represent the considered judgment of each juror. In order to return a verdict, it will be necessary that each juror agree thereto. In other words, all twelve jurors must agree on a verdict in this case.
¶ 16. The supreme court has on numerous occasions held that a trial court is not required to grant “an otherwise valid instruction if the subject matter contained in the proposed instruction is adequately covered by an instruction already granted.” Griffin v. State, 610 So.2d 354, 356 (Miss.1992). In the case sub judice, the record indicates that the requested instruction “offered no substance beyond that contained in the granted instruction.” Id. The trial court properly denied instruction D-7.
¶ 17. Additionally, defense counsel expressly agreed with the court that the information contained in instruction D-7 was already covered by the court’s instructions. The following exchange took place:
THE COURT: D-5 will be given. D-6 be given. D-7, I think, is already covered in the Court’s instructions.
MR. BUCKLEY: I’m satisfied. I think it is, Judge.
¶ 18. Therefore, any assignment of error related to the denial of instruction D-7 is procedurally barred as a result of defense counsel’s express approval of the use of the court’s jury instruction instead of defense instruction seven.
III.
The trial court committed reversible error in refusing defendant’s requested instruction D9.
¶ 19. Jones argues that no other instruction advised the jury that their vote must be free of reasonable doubt. Jones further contends that the trial court, by refusing instruction D-9, committed reversible error. Instruction D-9 read:
The Court instructs the Jury that each one of you has a duty in this case to decide the issues for yourself. After considering the evidence and the instructions and after fair consultation with your fellow jurors, if any one of you has a reasonable doubt of his guilt, it is your duty not to change your vote merely to agree with your fellow jurors but to favor a verdict of not guilty so long as you believe that there is a reasonable doubt.
¶ 20. The court in its instructions advised the jury that a guilty verdict must be free of reasonable doubt. Jury instructions of the court and those submitted by the State and the defense all addressed the issue of reasonable doubt. “So long as a jury is fully instructed, no error attaches to a refusal to give repetitive instructions.” Goldman v. State, 741 So.2d 949 (¶ 20) (Miss.Ct.App.1999). Jury instructions C-1, S-1, S-2, D-5, and D-6 granted by the court more than adequately informed the jury of the applicable law regarding reasonable doubt.
IY.
The trial court committed reversible error in allowing the jury to deliberate further and change their verdict after they had brought it out into open court and announced it.
¶ 21. Jones argues that he was subject to double jeopardy because the jury announced a verdict in open court and was then told to return to the jury room reduce that verdict to writing and deliberate further on a sentence. Jones states that the jury should have returned to the jury room only to reduce its verdict to writing. Jones alleges this double jeopardy to be *692 prohibited by both the federal and state constitutions.
¶ 22. Defense counsel failed to make a timely objection to this alleged error. After the jury announced in open court the result of its deliberations on the kidnaping charge, the trial judge instructed the jury to return to the jury room reduce its verdict to writing, and “make a farther consideration” of whether the jury or the court would determine the sentence. Defense counsel did not voice an objection to the court’s instructions to the jury to further consider the sentence. “A trial judge will not be put in error on a matter which was not presented to him for his decision.” Parker v. Mississippi Game and Fish Comm’n, 555 So.2d 725, 730 (Miss.1989). By failing to make a timely and contemporaneous objection to the court’s instruction, Jones did not properly preserve this issue for appellate review.
¶ 23. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF KIDNAPING AND SENTENCE TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED JONES COUNTY.
McMILLIN, C.J.,BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH RESULT ONLY.