# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00511-COA

**JEFFREY PICKETT A/K/A JEFFERY PICKETT**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                           **APPELLEE**

DATE OF JUDGMENT:                   03/27/2024
TRIAL JUDGE:                              HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:     TUNICA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         JOHN KEITH PERRY JR.
                                                 GARRET TYJUAN ESTES
ATTORNEY FOR APPELLEE:             OFFICE OF THE ATTORNEY GENERAL
                                                 BY: JULIANNE KAY BAILEY
DISTRICT ATTORNEY:                    BRENDA FAY MITCHELL
NATURE OF THE CASE:                  CRIMINAL - FELONY
DISPOSITION:                             AFFIRMED - 05/20/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.    A Tunica County grand jury indicted Jeffrey Pickett for one count of burglary of Patrick Williams's dwelling with the intent to commit a larceny in violation of Mississippi Code Annotated section 97-17-23(1) (Rev. 2020).[1] After a jury convicted Pickett as charged,

---

[1] Mississippi Code Annotated section 97-17-23(1) provides:

Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

the Tunica County Circuit Court sentenced him to twenty-three years in the custody of the Mississippi Department of Corrections (MDOC), with eighteen years to serve followed by five years of post-release supervision. After the court denied Pickett's motion for a judgment notwithstanding the verdict (JNOV) or a new trial, Pickett appeals, arguing that the trial court erred in denying his motion for directed verdict made during the trial and in denying his motion for a JNOV or a new trial. After reviewing the record, the parties' arguments, and relevant precedent, we affirm the jury's verdict and the trial court's order.

**Facts and Procedural History**

¶2. On January 10, 2023, Christopher Williams returned home after his girlfriend, Lula Hampton, and her daughter picked up Williams from jail.[2] Upon his arrival, Williams noticed that his front door was open. He then saw a masked man walking toward the back door with Williams's AR rifle in a pillowcase. Williams grabbed the masked intruder and began wrestling with him over the rifle, which the man eventually let loose. Just then, according to Williams, Pickett, who was unmasked, walked out of Williams's bedroom holding a handgun Williams owned, an "Elite Canik TP9." Pickett pointed the gun at Williams, causing Williams to back away. Pickett and the masked man then ran out of the home, with Pickett still carrying the handgun he had taken.

¶3. After the men left, Williams walked around looking for how they got in his home. Williams discovered that a bedroom window had been broken, as evidenced by shattered glass. Williams contacted law enforcement to report the burglary. When they arrived,

---

[2] Williams testified that his time in jail had nothing to do with Pickett or the matter before this Court.

2

Williams identified the unmasked intruder as Pickett, who was Hampton's cousin and whom law enforcement subsequently arrested.

¶4. On February 18, 2023, a Tunica County grand jury indicted Pickett on one count of burglary of a dwelling with the intent to commit larceny in violation of Mississippi Code Annotated section 97-17-23. After Pickett waived an arraignment and pleaded not guilty, a trial was held on March 22, 2024.

¶5. Captain Katie Ridley of the Tunica County Sheriff's Office testified first. She stated that a call came in around 8:40 p.m. about a residential burglary. When Ridley arrived at the home, she found several deputies, Williams, Hampton, and Hampton's children. Williams showed law enforcement the broken window where he believed the burglars had entered. Ridley also testified that she found no fingerprints—only a smear on the window, which was sent to the lab, but testing revealed nothing. Ridley testified that there were no other identifiers of the suspects (e.g., bloodstains) inside Williams's home. Ridley oversaw the processing of the scene, including photographing the broken window and other areas of the home. These photographs from the investigation were admitted into evidence. Ridley further testified that she and other officers looked for two individuals and questioned neighbors who may have seen strangers in the area. But they were unable to arrest anyone other than Pickett. Ridley also stated that law enforcement searched for Williams's handgun that Pickett had allegedly taken but had no success. On cross-examination, Ridley stated that both Williams and Hampton identified Pickett as one of the intruders. Ridley admitted that there was no physical evidence tying Pickett to Williams's home.

3

¶6.     The State then called Williams, who testified about arriving home and finding Pickett and the masked man. Specifically, Williams testified that when he threw the masked man up against the wall, the AR rifle knocked a hole in it. Williams stated that Pickett, whom Williams had known his entire life, rushed out of the bedroom, unmasked. Pickett pointed the Canik handgun at Williams so that Pickett and the masked man could escape. Williams also identified the receipt from his purchase of the Canik handgun to support his claim that he owned the gun that Pickett took.

¶7.     Williams also identified Pickett in the courtroom as one of the burglars. On cross-examination, Williams testified that he kept his Canik handgun on a counter in the front of the house and his AR rifle in his bedroom. He further testified that he normally keeps his front door locked and his back door bolted shut. He also testified that Pickett had visited Williams in the past. Lastly, Williams testified that there had been a previous burglary at his home, which led him to put a bolt on his back door.

¶8.     After Williams testified, the State rested, and the trial court questioned defense counsel:

> THE COURT:          May I presume you've made a Motion for Directed Verdict at this time that the State has failed to prove their case — a prima facie case against your client?
>
> PICKETT'S COUNSEL:   Yes, Your Honor.
>
> THE COURT:          All right. I'm going to deny that motion.

¶9.     Pickett testified as the sole witness in his defense. He stated that he was at his home on the evening Williams's house was broken into, and he denied any involvement in the

4

burglary. However, Pickett also stated that he had been in the area earlier that evening because his cousin had gotten into a fight. But Pickett said he returned home around 8 p.m. He also admitted that he had known Williams his entire life. Picket said he had had one prior conflict with Williams about two months before the burglary when Williams kicked Pickett's cousin out of Williams's home late one night. Pickett also testified that he had been to Williams's home in the past when his truck broke down, but he denied ever taking anything from Williams's home. During cross-examination, Pickett admitted that he knew Williams had been in jail just before returning home on the night of the robbery, but Pickett did not know how long Williams had been incarcerated.

¶10. The defense rested, the court instructed the jury, and the parties presented their closing arguments. After deliberating, the jury returned a guilty verdict. The court entered a judgment and sentencing order on March 27, 2024. The trial court sentenced Pickett to twenty-three years in the custody of MDOC, with eighteen years to serve followed by five years of post-release supervision.

¶11. On March 28, 2024, Pickett filed a motion for a JNOV or a new trial, arguing that the trial court erred in denying his motion for a directed verdict and in not giving a preemptory jury instruction. Pickett also argued that the verdict was against the overwhelming weight of the evidence and that the prosecution failed to prove its case against Pickett beyond a reasonable doubt. Pickett further requested a hearing on the motion. The trial court denied Pickett's motion without a hearing.

¶12. Pickett appeals, arguing that the circuit court erred in denying Pickett's motions for

directed verdict and JNOV, that the verdict was against the overwhelming weight and sufficiency of the evidence, and that the trial court abused its discretion when it denied his post-trial motion without a hearing. The State argues on appeal that the trial court did not err because ample evidence supported the jury's verdict.

**Standard of Review**

¶13. We review rulings on motions for a directed verdict or JNOV challenging the sufficiency of the evidence presented at trial de novo. *Stevenson v. State*, 366 So. 3d 949, 955 (¶20) (Miss. Ct. App. 2023); *Ehrhardt v. State*, 376 So. 3d 372, 383 (¶25) (Miss. Ct. App. 2023). The relevant question in a challenge of the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 325 So. 3d 709, 722 (¶47) (Miss. Ct. App. 2021).

¶14. When considering a challenge to the weight of the evidence on appeal, the appropriate standard of review is whether the trial court abused its discretion. *Moffett v. State*, 354 So. 3d 929, 944 (¶47) (Miss. Ct. App. 2022). "Our role as an 'appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id.* (quoting *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017)).

**Discussion**

I. **Whether the arguments for JNOV are procedurally barred.**

6

¶15.    Pickett argues on appeal that the trial court erred in denying his motion for a directed verdict that he made during trial and post-trial in his motion for JNOV. Specifically, Pickett contends that the evidence presented was not sufficient to prove each element of the charged offense. The State, however, argues that Pickett's claims regarding the sufficiency of the evidence are procedurally barred because both Pickett's motion for a directed verdict and motion for JNOV did not state the grounds with sufficient specificity.

¶16.    "The sufficiency of the evidence may be challenged by the defendant by moving for a directed verdict, requesting a peremptory instruction, or by moving for a judgment notwithstanding the verdict." *Williams*, 325 So. 3d at 722 (¶46) (citing *Pace v. State*, 242 So. 3d 107, 117 (¶24) (Miss. 2018)). However, in *Griffin v. State*, 269 So. 3d 337, 350 (¶40) (Miss. Ct. App. 2018), we stated:

> Our Supreme Court has held that "[a] motion for a directed verdict on the grounds that the state has failed to make out a prima facie case must state specifically wherein the state has failed to make out a prima facie case. Motions for a directed verdict must be specific and not general in nature."

(Quoting *Sheffield v. State*, 749 So. 2d 123, 126 (¶10) (Miss. 1999)). For example, in *Simmons v. State*, 401 So. 3d 1035, 1037 (¶1) (Miss. Ct. App. 2024), the defendant was convicted of capital murder during the commission of a burglary. During trial, at the close of the State's case, the defense moved for a directed verdict, stating:

> Your Honor, if I might, at this time, I would like to make a Motion for Directed Verdict in favor of my client. I do not believe the State has presented a [prima facie] case against my client. I would ask the Court for a directed verdict of not guilty.

*Id*. at 1040-41 (¶26). The court denied the motion. *Id*. at 1041 (¶26). At the close of the

defense's case, and after the State finally rested, Simmons renewed the motion for a directed verdict, arguing that no gun had been admitted:

> Your Honor, I would say the vast, vast majority of the evidence that the State is using against my client is hearsay, either from the co-defendant, or from others. There has been no gun admitted into evidence. There was much talk about a .22 revolver. I mean, it's just - - I just don't think the State has made a prima facie case against my client. I move for a Directed Verdict of not guilty on these findings.

*Id.* Again, the trial court denied the motion. *Id.* On appeal, Simmons argued, among other things, that the evidence was legally insufficient to establish each element of the crime. *Id.* at 1040 (¶25). However, this time Simmons contended that there was no evidence of a breaking. *Id.* at 1042 (¶29). This Court, citing *Griffin* and *Carey v. State*, 80 So. 3d 131, 135 (¶12) (Miss. Ct. App. 2012), held that Simmons was procedurally barred from raising this issue on appeal.

> Because Simmons did not specifically raise the issue of the insufficiency of the evidence to prove a "breaking" in his motion for a directed verdict at the conclusion of the State's case-in-chief, in his renewal of his directed verdict motion at the close of the evidence, or in his post-trial motion, this issue is procedurally barred from consideration on appeal.

*Simmons*, 401 So. 3d at 1042 (¶28).

¶17. Similarly, in the case at hand, Pickett failed to argue the deficiencies in the State's case when it moved for a directed verdict. There was merely an exchange with the court:

> THE COURT: May I presume you've made a Motion for Directed Verdict at this time that the State has failed to prove their case — a prima facie case against your client?
>
> PICKETT'S COUNSEL: Yes, Your Honor.
>
> THE COURT: All right. I'm going to deny that motion.

8

In addition, Pickett did not renew his motion for a directed verdict after he rested to add any specifics of the deficiencies of the State's proof. Moreover, in his motion for JNOV or a new trial, Pickett simply stated that "the court erred in failing to sustain the motion for directed verdict at the close of the State's case in chief and at the conclusion of the trial" with no further specifics concerning the alleged lack of evidence on the elements of the charge against him. Because Pickett did not argue with specificity how the State failed to establish the elements of the crime, the issue of the circuit court's denial of his motion for a directed verdict and his motion for a JNOV is procedurally barred on appeal.[3] Nonetheless, we address the arguments presented.

### II. Whether the evidence was sufficient and whether the jury's verdict was against the overwhelming weight of the evidence.

¶18. Pickett argues that no reasonable trier of fact could have found that the State proved all the elements of the burglary charge against him. Even if the argument were not barred, the evidence was sufficient to support the conviction.

¶19. "In considering whether the evidence is sufficient to sustain a conviction, this Court employs a de novo standard of review." *Green v. State*, 269 So. 3d 75, 79 (¶12) (Miss. 2018). In reviewing whether the evidence is sufficient to sustain a verdict,

> [W]e view the evidence in the light most favorable to the prosecution to determine whether "rational," "reasonable fair-minded" jurors "could have found" that the State proved each "essential element" of the crime. We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements.

---

[3] It is wise for the bench and bar to understand that even if the trial court seems disposed to denying a defendant's motion for a directed verdict, it is still incumbent upon counsel to make a record of the basis for the motion and the deficiencies in the State's proof.

9

*Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). "Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved its case." *Carson v. State*, 341 So. 3d 995, 1000 (¶9) (Miss. Ct. App. 2022).

¶20.    Mississippi Code Annotated section 97-17-23(1) defines burglary of a dwelling as:

> breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein[.]

The charge of burglary has two elements: proof of breaking and entering the house, and proof of the intent to commit some crime therein. *Holder v. State*, 348 So. 3d 370, 374 (¶9) (Miss. Ct. App. 2022). In reviewing Pickett's case, we must determine whether the State presented sufficient evidence to prove each of these elements.

¶21.    "[A]ny effort expended to enter another's property to commit a crime constitutes a breaking." *Id*. at 376 (¶19) (quoting *Goldman v. State*, 741 So. 2d 949, 951 (¶5) (Miss. Ct. App. 1999)). "The slightest physical entry into the previously secure enclosure is sufficient to satisfy the 'entering' component of a burglary." *Id*. (quoting *Ramer v. State*, 156 So. 3d 919, 923 (¶12) (Miss. Ct. App. 2014)). Here, Williams testified that he generally kept his front door locked and his back door bolted shut. Yet when Williams arrived home, the masked man and Pickett were inside. They obviously gained entry through the broken bedroom window as shown in the photographs entered into evidence. Viewed in a light most favorable to the prosecution, the evidence was sufficient for a jury to believe that Pickett and the masked man broke Williams's window to enter in his previously secure dwelling. Accordingly, the first element, breaking and entering, was established. Concerning proof of

an intent to commit a crime, the State again presented Williams's testimony that Pickett was in his house, took Williams's gun, and fled. Thus, there was proof that Pickett entered the house with the intent to take something Williams owned.

¶22. Pickett offered an alibi (that he was "at home at the time of the break-in") and argues that the "contradicting, uncorroborated testimony of Williams" was insufficient. However, "[t]he testimony of a single uncorroborated witness is sufficient to sustain a conviction." *Holder*, 348 So. 3d at 378 (¶29). For example, in *Bell v. State*, 125 So. 3d 75, 76 (¶2) (Miss. Ct. App. 2013), the State's sole witness against the defendant for burglary was the victim. In that case, Courtney Turner was showering in her boyfriend's apartment when she heard movement outside the bathroom door. Upon opening the door, she saw a man standing there with her wallet. *Id.* She got the man out of the apartment and discovered an open window where he had gained entry. *Id.* After calling the police, Turner described the intruder to them and later picked Bell's photograph out of a photo line-up. *Id.* at (¶3). Turner was the only witness to identify Bell at trial. *Id.* at 78 (¶8). The court denied both the motion for directed verdict at trial and Bell's motion for JNOV. *Id.* at 76 (¶1). On appeal, we held that "Turner's testimony alone provides ample evidence from which any rational juror could have found beyond a reasonable doubt that Bell was guilty of burglarizing the dwelling in question." *Id.* at 78 (¶8). Further, we held that her testimony and identification of the defendant, both through lineup and at trial, was sufficient to support Bell's conviction. *Id.* at 78-79 (¶11). Similarly, in this case, Williams, who has known Pickett all his life, identified him to law enforcement on the night of the burglary, as testified to by Ridley, and

11

identified him again in court for the jury.

¶23.    Moreover, despite Pickett's alibi or any alleged contradictions between Williams's and Ridley's testimonies, when the evidence conflicts, "it is the jury's role to assess the witnesses' credibility and the weight of the evidence." *Carson*, 341 So. 3d at 1101 (¶17). Given the physical evidence of unlawful entry and Williams's testimony identifying Pickett as the intruder who left his home with his handgun in his possession, the record contains sufficient evidence for a jury to find that Pickett committed a burglary. "Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness." *Wilson v. State*, 343 So. 3d 1041, 1051 (¶47) (Miss. 2022) (quoting *Boone v. State*, 973 So. 2d 237, 245 (¶22) (Miss. 2008)). We find that the State presented sufficient evidence to prove that Pickett had broken into and entered Williams's dwelling and left with a gun that Williams owned.

¶24.    Moreover, the weight of the evidence supported the verdict. This Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Bell*, 125 So. 3d at 78 (¶10). The evidence is viewed "in the light most favorable to the verdict," and our standard of review for denying a motion for a new trial is for an abuse of discretion. *Moffett*, 354 So. 3d at 944 (¶47). Jurors "have the duty[] to resolve the conflicts in the testimony they hear." *Wilson*, 343 So. 3d at 1051 (¶47). In this case, the jury heard evidence from Williams and law enforcement investigating the crime. The only evidence in support of Pickett was his own testimony. For essentially the reasons explaining the sufficiency of the evidence, the

12

verdict was not against the overwhelming weight of the evidence, nor will affirming it sanction an unconscionable injustice.

### III. Whether the circuit court abused its discretion when it summarily denied Pickett's motion for JNOV or for a new trial.

¶25. Pickett finally argues that this Court should remand his case "for the circuit court to make specific findings of fact and conclusions of law as to its decision to deny Pickett's motion [for JNOV and a new trial]." Pickett cites *Rice v. State*, 723 So. 2d 1239 (Miss. Ct. App. 1998), as authority for such a request. However, *Rice* is distinguishable from Pickett's case. In *Rice*, after the trial, the defendant filed an extraordinary motion for a new trial asserting that the prosecution had failed to turn over to the defense a statement made by another individual who admitted to committing the auto burglary and stated that Rice had nothing to do with the crime. *Id*. at 1241 (¶5). The trial court, without an evidentiary hearing, denied this motion. *Id*. In the initial review of the case on appeal, this Court remanded the case for the trial court to make specific findings concerning the allegations contained in the motion for a new trial. *Id*. at (¶7). After the court did so, we continued to consider Rice's appeal. *Id*. Pickett's case is different in that Pickett's post-trial motion did not detail at all any specific evidence that was lacking or raise any new information that would warrant a remand for the circuit court to make specific findings.

¶26. This Court has ordered evidentiary hearings on motions for JNOV in specific circumstances, such as juror misconduct. In *Grimes v. State*, 361 So. 3d 179, 193 (¶35) (Miss. Ct. App. 2023), we held that "[i]f a defendant provides information that establishes 'good cause' that the jury may have been presented with extraneous information, the court

13

is to hold a hearing to determine if the jury did, in fact, consider extraneous information and what that information actually was." We added that the court abused its discretion by failing to conduct a hearing on Grimes's allegations. *Id.* at (¶36). In the case at hand, Pickett made no specific allegations at all as to why he was entitled to JNOV or a new trial. Thus, the court had no reason to conduct a hearing

¶27. Moreover, Mississippi Rule of Criminal Procedure 25.1, which sets out the criteria for post-trial motions, does not require the court to hold a hearing on such motions. Nor did Rule 10.5 of the Uniform Rules of Circuit and County Court Practice, which governed motions for new trials in criminal actions prior to the adoption of the Rules of Criminal Procedure in 2017. Seeing nothing in the Rules or relevant precedent that required the circuit court to hold a hearing on Pickett's motions for JNOV or for a new trial, or any basis for requiring the circuit court to make specific findings of fact, we find this issue to be without merit.

**Conclusion**

¶28. We hold that Pickett's arguments concerning the circuit court's rulings denying his motions for a directed verdict and JNOV are procedurally barred because he failed to argue them with specificity at trial. We nonetheless find that there is sufficient evidence for a reasonable jury to find Pickett guilty of burglary of a dwelling. Similarly, the circuit court did not abuse its discretion by denying Pickett's motion for a new trial based on the testimony and evidence supporting the conviction, which shows the jury's verdict was not against the overwhelming weight of the evidence. Finally, Pickett alleged no specific reason in his post-

14

trial motion that would require the circuit court to have held a hearing prior to ruling on the motion or issue findings of fact and conclusions of law. Therefore, the court did not err by not conducting a hearing on Pickett's motion. Accordingly, we affirm the order denying the post-trial motion and affirm the judgment of conviction and sentencing.

¶29.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**