788 So.2d 826 (2001)
Eddie Charles PERKINS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00228-COA.
Court of Appeals of Mississippi.
April 24, 2001.
Rehearing Denied June 26, 2001.
*827 Dan W. Duggan Jr., Brandon, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Jackson, Attorney for Appellant.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
IRVING, J., for the Court:
¶ 1. This appeal arose from the Rankin County Circuit Court where Eddie Charles Perkins was tried and convicted for the crime of burglary of a dwelling. Perkins, feeling aggrieved, effectuated this appeal, raising the following issues for our review: (1) whether the trial court erred by denying defense instruction D-7, a lesser included offense instruction, and D-9, both of which presented the appellant's theory of the case or defense, and (2) whether the trial court erred by failing to grant defendant's motion for directed verdict and motion for judgment notwithstanding the verdict.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Staci May, who lived in a trailer with her fiancé, Eddie Johnston, left her home for fifteen to twenty minutes. Upon her return, she noticed that her blinds were out of place and a doily, which normally rested on the couch, had been moved. Additionally, her back door was open, and a Beanie Baby, belonging to her son, was lying on the floor with a dirty *828 print on it. She explained that the back door was closed when she left earlier in the morning. May testified that she is an exceptionally tidy person and that the condition of her residence upon her return led her to believe that someone had altered the way she left things.
¶ 4. May testified that she looked out of the blinds of a back window and saw Perkins at the window. She described her backyard as fenced in with a locked gate. May then phoned the police, described the scene and identified Perkins. She knew Perkins because he lived a short distance away, about sixty to one hundred yards. She included in her description that the man was wearing a blue sweatshirt.
¶ 5. Upon further investigation of the residence, May discovered that a box of coins that had "Saved for Baby" written on it was missing. Also missing was a plastic bag containing old Confederate money and foreign bills. Perkins was arrested and a blue sweatshirt, described by the officer as still warm, was recovered. Following a search incident to the arrest, the arresting officer found the Confederate and foreign money in the front pocket of Perkins's shirt. After investigating the scene, the officer noticed that the fence, enclosing May's yard, was "pushed down" and that there were fresh tracks in the grassy area on both sides of the fence. Latent fingerprints were taken from the scene, however, they were "smudged" and incomparable.
¶ 6. Perkins testified that he had gone to the residence to borrow a rake. He explained that he had been given permission to enter the property to borrow the rake when necessary. He told the jury that he saw the bag containing the money on the porch and picked it up with the intention of asking May or Johnston if it belonged to either of them. At that time, he noticed May looking at him out of the window. He was startled by her; therefore, he panicked and ran back to his home. Perkins denied breaking into the home.

1. Jury Instructions
¶ 7. Perkins argues that his rights of due process and a fair trial were violated because the jury was not given the opportunity to consider the lesser-included offenses of trespass and/or receiving stolen goods. Perkins asserts that his defense or the theory of his case included both trespass and receiving stolen goods, and as such, the jury should have been instructed so as to allow it the option of returning a verdict on one of these lesser offenses.
¶ 8. The courts have consistently held that a defendant is entitled to a lesser offense instruction only where there is an evidentiary basis in the record therefor. Mease v. State, 539 So.2d 1324, 1330 (Miss. 1989). Further, the evidence in a particular case generally warrants granting a lesser offense instruction if a rational or reasonable jury could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser-included offense. Id. (quoting Monroe v. State, 515 So.2d 860, 863 (Miss.1987)); see also, Rowland v. State, 531 So.2d 627, 631 (Miss.1988); Harper v. State, 478 So.2d 1017, 1021 (Miss.1985). The court instructs in Ruffin v. State, 444 So.2d 839, 840 (Miss.1984), that a lesser-included offense instruction should only be refused in cases where the evidence could only justify a conviction of the principal charge.
¶ 9. While Perkins argues on appeal that his defense at trial included trespass and receiving stolen goods, our review of the record convinces us otherwise. At trial, Perkins argued vehemently that he was on the property with permission and that he took the items with the intention of returning them upon Johnston's return. *829 Perkins's very argument was that he was not trespassing. He testified that Johnston had given him permission to enter the property and borrow the rake whenever necessary. The theory of Perkins's case at trial directly contradicts his request for a jury instruction on trespass. Additionally, Perkins argued that he lacked the requisite mens rea for the crime of burglary because he took the items intending to find out whether they belonged to Johnston. He testified that he was attempting to safeguard the items until he could determine the rightful owner. This argument also contradicts Perkins's request for a jury instruction on receipt of stolen goods.
¶ 10. Because there was no evidence offered to prove trespass or receipt of stolen goods, no reasonable jury could find Perkins guilty of either crime. Pursuant to Mississippi case law, as mentioned above, the lack of evidence which could lead to a reasonable jury rendering a verdict of guilty for a particular crime, negates the need for or entitlement to a jury instruction on such crime. Thus, the trial court was not in error for denying Perkins's request for an instruction on trespass and receiving stolen goods.

II. Motions for New Trial, Directed Verdict and Judgment not Withstanding the Verdict
¶ 11. Perkins also argues that the trial court erred in denying his motions for a directed verdict, judgment notwithstanding the verdict and new trial. He asserts that the State fell short of meeting its burden by failing to prove the elements of the crime of burglary.
¶ 12. The elements required to prove the crime of house burglary are the unlawful breaking and entering the dwelling of another with the intent to commit a crime therein. Perkins argues that the State failed to prove the elements of breaking and entering as well as the intent to commit a crime. Therefore, Perkins argues, the trial court should have granted one of the aforementioned motions.
¶ 13. A motion for JNOV challenges the legal sufficiency of the evidence supporting the guilty verdict. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Butler v. State, 544 So.2d 816, 819 (Miss.1989). A motion for new trial challenges the weight of the evidence. McClain, 625 So.2d at 781. A motion for a new trial implicates the discretion of the trial judge, and the trial judge's decision to deny the motion will not be reversed on appeal unless there has been an abuse of that discretion. See Crenshaw v. State, 520 So.2d 131, 135 (Miss.1988). The trial judge's decision not to grant a JNOV will be reversed only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty. Harveston v. State, 493 So.2d 365, 370 (Miss.1986).
¶ 14. The State presented the testimony of May which was offered to show that someone entered the home while she and Johnston were away. She testified that when she returned she noticed that her back door was open, items were missing and several items had been knocked onto the floor. The investigating officer testified that the fence was "pushed down" and footprints led from May's trailer to Perkins's home which was nearby. Perkins was found at his home and in his possession were the very items that were missing from May's home, the Confederate and foreign money.
¶ 15. Perkins admits to being on the property, but argues that no one was able to testify that he actually entered the dwelling. Under Perkins's view of the law, *830 this failure dooms the State's case. Apparently Perkins forgets that elements of a crime may be proven by both direct and circumstantial evidence. There was overwhelming circumstantial evidence as well as some direct evidence of Perkins's guilt. When May returned to the home, she noticed that several items within the home had been moved and the place looked disheveled, as if someone other than the residents had been there. The back door, which had been closed when May left, was open. Perkins was seen on the property peeking in the window. He was arrested a short time later at his home with the items that had been removed from May's home. This assignment of error is utterly without merit.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY ADJUDICATING APPELLANT GUILTY OF HOUSE BURGLARY AND SENTENCING HIM TO TWENTY-FIVE YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR.