894 So.2d 619 (2004)
Randy ARBUCKLE a/k/a Randy Dean Arbuckle and Tanoah Bittick, Appellants,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00335-COA.
Court of Appeals of Mississippi.
November 23, 2004.
Rehearing Denied March 1, 2005.
*620 Carolyn R. Benson, Fulton, James O. Ford, Tupelo, for appellant.
Office of the Attorney General by Deirdre McCrory, for appellee.
Before BRIDGES, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Randy Arbuckle and Tanoah Bittick were convicted of burglary of a dwelling and simple assault. For the burglary conviction, Arbuckle was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, with fifteen years of the sentence suspended and five years of post-release supervision. Bittick was sentenced to five years in the custody of the Mississippi Department of Corrections, with five years suspended. For the simple assault conviction, Arbuckle and Bittick were each sentenced to six months in the Itawamba County Jail, with the sentence suspended, and a fine of $500. Though Bittick's sentences were suspended, she appeals to have her convictions reversed altogether.
¶ 2. On appeal, Arbuckle and Bittick assert that the court erred in refusing a jury instruction which provided for the lesser-included offense of trespass and in denying the motion for a directed verdict and the motion for a new trial. We find no error and affirm.

FACTS
¶ 3. On or about July 16, 2002, Jason Mears borrowed $100 from Bittick. Mears was unable to repay the loan, and Maranda Robbins offered to pay the debt. Bittick refused Robbins' initial offer.
¶ 4. On July 19, 2002, Jason Wilemon, Robbins and Bittick all went to work as usual at the Kwik-Sak in Fulton, Mississippi. After completing their shifts, Wilemon drove Robbins to her home, where she lived with Mears. Shortly thereafter, Bittick came to Robbins' home with her companion, Arbuckle.
*621 ¶ 5. Robbins, Wilemon, and Spears each testified that while inside the living room, they heard "pounding ... knocking and banging" on the door and voices demanding them to open the door. They testified that this commotion continued for approximately ten to fifteen minutes, during which time they sat quietly.
¶ 6. Robbins testified that she moved toward a different part of the home and saw Bittick enter through the front door screaming, "Where is he at?" Robbins testified that, while she was "dealing with" Bittick, Arbuckle entered the home looking for Mears. Both the testimony of Robbins and Mears described the threats made towards Mears by Arbuckle once he entered the home. An argument ensued while Mears and Wilemon were inside the bathroom and Bittick and Arbuckle were outside the bathroom door pushing on the door attempting to gain entry to the bathroom. The door to the small bathroom caved in, and in the commotion, Mears was struck in the face by Arbuckle. At trial, there was conflicting testimony as to whether the blow was intentional. Once the door caved in on top of Wilemon and Mears, Mears ran out of the trailer and was pursued by Arbuckle. Once outside, Arbuckle hurled a large rock into the windshield of Mears' vehicle.
¶ 7. After the disturbance in the bathroom, Bittick and Robbins had a conversation where Robbins again offered to pay the debt Mears owed Bittick with her paycheck. Bittick accepted the payment and took the check immediately to Kwik-Sak to be cashed and then returned to Robbins' home to return the balance of the paycheck in excess of the debt.
¶ 8. At trial, Bittick testified in her defense while Arbuckle did not testify. The jury found both Arbuckle and Bittick guilty of burglary of a dwelling and simple assault.

ANALYSIS

I. Whether the trial court erred in refusing a jury instruction which provided for the lesser included offense of trespass.
¶ 9. Arbuckle and Bittick claim that the trial court erred when it refused to give proposed jury instruction D-4, which would allow the jury to find them guilty of trespass, as a lesser-included offense, rather than burglary. The instruction provided that if the jury found Arbuckle and Bittick entered Robbins' home willfully and unlawfully without her authority but without the intent to commit assault, they should be found guilty of trespass rather than burglary.
¶ 10. The accused is entitled to a lesser-included offense instruction only where there is an evidentiary basis in the record therefor. Wilson v. State, 639 So.2d 1326, 1329 (Miss.1994); Lee v. State, 469 So.2d 1225, 1230 (Miss.1985); Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983). The evidence at trial did not support such an instruction. Furthermore, even if the State did not establish the breaking and entering, Arbuckle and Bittick asserted their innocence based on alleged permission to enter the dwelling and satisfy the debt owed to Bittick rather than that they were at most guilty of mere trespass. Thus, a lesser-included instruction for trespass would be moot given their argument that they had permission to be on the premises.
¶ 11. This Court has previously held that a lesser-included offense instruction should be refused in cases where the evidence could only justify a conviction of the principle charge. Perkins v. State, 788 So.2d 826, 828(¶ 8)(Miss.Ct.App.2001) (citing Ruffin v. State, 444 So.2d 839, 840 (Miss.1984)). For Arbuckle and Bittick to *622 be found guilty of burglary, the State had to prove two elements: (1) they broke into the home of Robbins, and (2) they did so with the intent to commit an assault while in the home. There was evidence at trial to support a finding that Arbuckle and Bittick broke into and entered Robbins' home. The critical element establishing a trespass is the lack of authority to be on the property. In this case, there was more than a mere absence of permission to enter the home. Once Arbuckle and Bittick realized they were not welcome on the property and that they would not receive permission to enter the home, they proceeded to gain entry by their own means. The evidence clearly showed the two broke into and entered the home when they punched through the tape covering the hole by the front door in order to unlock the door from the inside. Furthermore, the existence of the marks on the rear entrance where a tire iron was used to attempt entry supports the more serious offense of burglary rather than trespass.
¶ 12. Additional grounds for denying the lesser included instruction are found in the evidence of the intent of Arbuckle and Bittick to commit an assault once inside the home. However, Arbuckle and Bittick argue that such intent did not exist.
¶ 13. Arbuckle and Bittick claim that their intent to commit an assault was not formed until after they entered the home. They admit to everything but the existence of any intent to commit assault. Nevertheless, their conduct both before and after entering Robbins' home clearly refutes such contention. Indeed, there was substantial evidence to establish intent. Robbins testified that Bittick had previously warned her that Arbuckle was going "to kick Mears' a**" if the debt was not paid. Their intent was established by the punch through the tape covering a hole by the door where Bittick reached in to unlock the door, the use of the tire iron to try to pry the back door open, their breaking down the bathroom door, the punch to the face of Mears; and finally, the violence demonstrated by Arbuckle hurling a large rock into Mears' windshield.
¶ 14. Arbuckle's and Bittick's actions speak louder than mere words. There was sufficient evidence of the principle charge and a complete lack of evidence to support an instruction for trespass. We find no error in the trial court refusing an instruction for trespass.

II. Whether the trial court erred in denying Arbuckle and Bittick's motions for judgment notwithstanding the verdict or in the alternative for a new trial.
¶ 15. Arbuckle and Bittick argue that the State failed to prove all elements of the charge of burglary beyond a reasonable doubt. Here again, Arbuckle and Bittick argue that the evidence was insufficient to establish the intent to commit an assault because no direct evidence was offered. Arbuckle and Bittick claim the trial court erred in denying their motion for judgment notwithstanding the verdict or, in the alternative, a new trial.
¶ 16. Motions for judgment notwithstanding the verdict implicate the sufficiency of the evidence. Bullins v. State, 868 So.2d 1045, 1048 (¶ 12) (Miss.Ct.App.2004). Our standard of review on the question of the legal sufficiency of the evidence is clearly defined. In Manning v. State, 735 So.2d 323, 333 (¶ 10) (Miss.1999), the Mississippi Supreme Court held:
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the *623 light most consistent with the verdict. We give [the] prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.
¶ 17. On a motion for a new trial, we look to determine whether the jury verdict is against the overwhelming weight of the evidence. Montana v. State, 822 So.2d 954, 967 (¶ 61)(Miss.2002). In doing so, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id. at 967-68(¶ 61). Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Id. at 968(¶ 61). Finally, it must also be remembered that it is the duty of the jury to assess the credibility of witnesses. Hubbard v. State, 819 So.2d 1192, 1196 (¶ 12) (Miss.2001).
¶ 18. Arbuckle and Bittick were charged under Mississippi Code Annotated section 97-17-23 (Rev.2000), which provides:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.
¶ 19. As discussed in the preceding section, the State presented sufficient evidence to support the burglary conviction. Arbuckle and Bittick raise the same argument here, that the elements of burglary were not sufficiently proven. Once again, a lack of direct evidence to establish the requisite intent is relied upon as support.
¶ 20. The absence of direct evidence does not mean that there was a complete lack of evidence that Arbuckle and Bittick intended to commit a crime once inside. Indeed, Bittick, through her own testimony, established that she and Arbuckle went to Robbins' home to attempt to satisfy the debt owed to Bittick, and when this could not be accomplished by Mears, a commotion ensued resulting in Mears being hit in the face. There was testimony by law enforcement officers that Robbins' home was in such condition that it appeared that a violent crime had been committed. The record established that the tape covering the hole next to the front door appeared to have been punched through, there were marks where someone had attempted to pry the door open on the panel of the back door, and the interior bathroom door was crashed in. Furthermore, Bittick admitted that, after the commotion, she took the paycheck, cashed it and returned to Robbins' home to give her the balance of the check.
¶ 21. It was within the jury's province to draw reasonable inferences from the evidence based on their experience and common sense. Hester v. State, 463 So.2d *624 1087, 1093 (Miss.1985). Therefore, we find that it was reasonable for the jury to infer that the actions of Arbuckle and Bittick at Robbins' home were sufficient to support the crime of burglary. Arbuckle and Bittick were present at the home for the sole purpose to obtain money. When Robbins, Wilemon, or Mears did not voluntarily allow Arbuckle and Bittick into the home, Arbuckle and Bittick went into a rage and broke into the dwelling and assaulted both Robbins and Mears. Arbuckle then proceeded to commit a further act of violence when he burst the windshield of Mears' vehicle with a large rock. Bittick continued to threaten and intimidate Robbins until the paycheck was surrendered whereupon Bittick and Arbuckle left the premises and cashed the check in order to satisfy the debt. From this evidence, the jury certainly could reasonably infer that Arbuckle and Bittick formed the intent to assault those inside the home immediately upon gaining entry to the home.
¶ 22. Considering the appropriate standards of review, we find the evidence to be of such weight and sufficiency as to support the jury's verdict that found Arbuckle and Bittick guilty of both burglary and simple assault. Thus, we find that this assignment of error is without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF ITAWAMBA COUNTY OF CONVICTION OF RANDY ARBUCKLE OF COUNT I, BURGLARY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, PAY FINE AND COSTS OF $1,748.50 AND PAY RESTITUTION OF $1,214 TO BE PAID JOINTLY AND SEVERALLY WITH CO-DEFENDANT; COUNT II, SIMPLE ASSAULT AND SENTENCE OF SIX MONTHS IN THE ITAWAMBA COUNTY JAIL, SUSPENDED AND FINE OF $500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ITAWAMBA COUNTY.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF ITAWAMBA COUNTY OF CONVICTION OF TANOAH BITTICK OF COUNT I, BURGLARY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCE SUSPENDED AND FIVE YEARS SUPERVISED PROBATION, PAY FINE AND COSTS OF $1,748.50 AND PAY RESTITUTION OF $1,214 JOINTLY AND SEVERALLY WITH CO-DEFENDANT; COUNT II, SIMPLE ASSAULT AND SENTENCE OF SIX MONTHS IN THE ITAWAMBA COUNTY JAIL, SUSPENDED, TO RUN CONCURRENTLY WITH SENTENCE IN COUNT I AND FINE OF $500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ITAWAMBA COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ. CONCUR. KING, C.J., CONCURS IN RESULT ONLY.