BRIDGES, P.J.,
for the Court.
¶ 1. Reginald Sims was convicted in the Circuit Court of Warren County of two counts of aggravated assault in a shooting involving two victims, Derrick Williams and Ivory Walker. Sims appeals, asserting a single issue: whether the evidence introduced at trial was sufficient to grant an aiding and abetting jury instruction, Jury Instruction S-3. Sims contends that there was no factual basis for the instruction, because his co-indictee, Bobby Nelson, testified there had not been any common plan to commit the assaults. Finding that the State did introduce evidence that could allow the jury to infer that there had been a common plan to commit the assaults, we affirm.
FACTS
¶ 2. On the evening of October 7, 2002, Williams and Walker were driving around Vicksburg in a car and drinking alcoholic beverages with their friends, Shacandy Harris, Shawanda Harris, Roosevelt Qualls and Ménica Jackson. They exited the vehicle at Qualls’ mother’s house, along Sky Farm Avenue, and were approached by a group of approximately twenty people. Foul language was exchanged, and one of the women in the crowd attempted to strike Walker. Walker’s girlfriend, Jackson, struck the woman several times, knocking her to the ground. Sims moved to confront Jackson, and Williams offered *187 to fight with Sims. Sims declined and ran off, saying “I’ll be right back.”
¶ 3. The two groups then separated, with William’s and Walker’s group remaining at Qualls’ mother’s house, and the other group moving back along Sky Farm Avenue in the direction from which it had approached. Shortly thereafter, Sims drove by Qualls’ mother’s house, and said “something about shooting the block up.” Williams, Qualls, Shacandy Harris and Shawanda Harris then went to report the threat to the Vicksburg Police Department, and then returned to Qualls’ mother’s house.
¶ 4. Prior to his trial, Bobby Nelson pled guilty to a charge stemming from the same incident. The record is unclear as to what exact charge Nelson pled guilty to, but he received a sentence of three years probation. Nelson was called as a witness for the State. He testified that he returned home and found that his caller I.D. showed he had received a telephone call. He returned the call and spoke with Sims’ sister, who told him Sims “had just got into it” with Williams and Walker. Nelson took his hand gun and left his home, and ultimately met Sims. The two men then went together to Qualls’ mother’s house. Sims asked him for the hand gun, and Nelson gave it to him. Sims told Nelson to go to the front of the house and speak with Qualls, while he would wait behind. Nelson further testified that he went to the front yard, and was “jumped” by Williams and Walker. He heard gunshots, and assumed Sims was shooting. He then ran away. Nelson explicitly denied that he and Sims made any common plan to commit the assaults. Sims did not testify.
¶ 5. Williams testified that Nelson came to the house, wishing to fight with Qualls, but Qualls had gone inside to feed or change the diaper on his child. Nelson exchanged unpleasantries with Walker and Jeffrey Wiggins. Nelson tried to hit Walker, and those two men began fighting. Williams testified that he saw Walker knock Nelson to the ground, and saw Sims walk from around a house with a pistol. Williams said Sims was trying to fire the hand gun, but “the gun was jammed up.” Williams ran to Walker, and pulled him off of Nelson, and told him to run. As the two men ran, Sims shot Williams in the back. Williams fell to the ground. Sims walked to the prostrate Williams and shot him in the face. Williams suffered partial paralysis and lost his right eye.
ANALYSIS
Jury Instruction S-3
¶ 6. Sims contends that an aiding and abetting jury instruction, Jury Instruction S-3, should not have been given. Central to Sim’s contention is the fact that on the night of the shooting several witnesses told investigating police officer that Nelson, not Sims, shot Williams. At trial, two of these witnesses testified for the State, and both identified Sims as the shooter. Sims cross-examination brought out these inconsistent identifications. Later in the trial, during Sims’ case-in-chief, Nelson was called to testify, and in his direct testimony denied having shot Williams, and said he could not identify the shooter. The State requested the aiding and abetting instruction because the conflicting evidence could have led to a finding that Sims did not shoot Williams. S-3 provided:
The Court instructs the Jury that the guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the *188 direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.
This jury instruction was adopted by the Supreme Court in Milano v. State, 790 So.2d 179(¶ 21) (Miss.2001).
¶ 7. Sims contends that because Nelson explicitly denied there was any common plan or scheme, there was no evidentiary basis to support S-6. Moreover, because Walker and other eyewitnesses initially identified Nelson as the person who shot Williams, Sims contends that but for the aiding and abetting instruction, it is possible that he would not have been convicted. This argument is misplaced. Merely because a fact is in dispute does not require that the determination of that fact be removed from the jury’s consideration. In fact, the exact opposite is true: where facts are in dispute, it is the jury’s province to decide them. McFee v. State, 511 So.2d 130, 133-34 (Miss.1987). Furthermore, it is well settled that when facts are in dispute it is proper to grant a jury instruction on a theory of the case so that the determination of the question is presented to the jury. See e.g., Arbuckle v. State, 894 So.2d 619(¶ 11) (Miss.Ct.App.2004).
¶ 8. In this case, the trial judge found that testimony had been introduced that would support an inference that Sims and Nelson acted in concert in committing the aggravated assault. The trial judge stated:
The jury is entitled to make reasonable inferences based on the testimony that they have heard. They have heard the testimony of Bobby Nelson, that the Defendant called him, arranged to meet him, did meet him, asked if he had his gun, took his gun. They both went behind the apartments at 1519 Sky Farm. Reginald had the gun. He sent Bobby around the front to ask for Roosevelt Qualls and he stayed back there. He was participating in a plan. Reginald is — they are entitled to inferences from the evidence. And the evidence is that Bobby did what Reginald told him to do. He gave him his gun. They went to the location where the shooting took place. Bobby circled around in front. Reginald went behind the building. And, yes, sir, I think that is enough for a common plan.
The circuit court correctly found that the evidence supported granting the aiding *189 and abetting jury instruction. This assignment of error is without merit.
¶ 9. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I OF AGGRAVATED ASSAULT AND SENTENCE OF TWELVE YEARS AND COUNT II OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE YEARS, WITH SENTENCE TO RUN CONSECUTIVE TO COUNT I, FOR A TOTAL OF SEVENTEEN YEARS, NOT AS A FIRST OFFENDER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COST OF THIS APPEALS ARE ASSESSED TO WARREN COUNTY.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.