## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00596-COA

JEFFERY RAMER A/K/A JEFFREY RAMER                    APPELLANT

v.

STATE OF MISSISSIPPI                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/11/2013 |
| TRIAL JUDGE: | HON. ROBERT WILLIAM ELLIOTT |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES PHILLIP BROADHEAD |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY AND SENTENCED, AS A HABITUAL OFFENDER, TO SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | AFFIRMED - 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND CARLTON, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.     A jury sitting before the Tippah County Circuit Court found Jeffery Ramer guilty of burglary. The circuit court found that Ramer qualified for sentencing as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2007). Accordingly, the circuit

court sentenced Ramer to seven years in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Ramer appeals[1] and argues that the circuit court erred when it allowed the prosecution to introduce improper opinion evidence from lay witnesses. Ramer also claims that there is insufficient evidence to support his conviction for burglary. Finally, Ramer claims that the jury's verdict is contrary to the overwhelming weight of the evidence. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Ramer's conviction stems from the burglary of Greg Isom's tire shop in Ripley, Mississippi. Isom rented a building approximately five feet from his shop to Walter Boyd, who used the building to fix tires and perform mechanic work. Boyd hired Ramer, who also lived in some of the space that Boyd rented from Isom.

¶3. One morning during July 2011, Isom arrived at his shop and discovered that a wooden panel covering a hole formerly occupied by an air-conditioning unit was missing. The hole was approximately seven to eight feet off of the ground, and it was in a wall in the back of his shop. Isom then noticed that some of his merchandise was also missing. To be specific, two speakers and an amplifier were gone. Two or three days earlier, Ramer had said that he wanted the merchandise. Isom and his employee, Gary Barnes, noticed that a wooden panel was missing from the outside of the shop. Isom and Barnes went behind the shop, where they found Ramer. Ramer denied that he had seen anyone in the area. When Isom and

---

[1] Law students Kimberly-Joy Lockley and Marcus A. Williams drafted Ramer's brief under the supervision of Professor Phillip W. Broadhead, director of the Criminal Appeals Clinic at the University of Mississippi School of Law.

Barnes went to the other side of the shop, they saw footprints in the wet earth. There was also a clearly distinguishable footprint close to the missing panel.

¶4. Isom and Barnes then went back to the area where Ramer was working on a car. Isom noticed a crowbar near Ramer. According to Isom, the crowbar had chips of paint on it. The paint chips looked similar to paint on the back of a locked metal door to his shop. Isom also noticed that someone had unsuccessfully attempted to pry open the metal door. There was a footprint on the metal door. Isom deduced that someone had tried to kick in the metal door. Isom asked Ramer to show him and Barnes the bottom of his shoes. Ramer complied. According to Isom and Barnes, the distinctive pattern on the bottom of Ramer's shoes looked identical to the footprints in the wet earth around the back of the shop and the footprint on the metal door. Afterward, Isom went into the shop and called the Ripley Police Department.

¶5. Detective Scott Watson responded. When Detective Watson went to look at the footprints, they had been partially smudged away. Even so, Detective Watson took pictures of the footprints, the bottom of Ramer's shoes, and the scene in general. He also seized the crowbar and gathered paint chips from the area around the metal door. At Boyd's request, Detective Watson did not take Ramer into custody at that time. Boyd told Detective Watson that if Isom did not object, he wanted to try to "work something out" with Ramer over the course of the weekend. However, Ramer did not show up for work the following Monday.

¶6. Ramer was later arrested and charged with burglary. He went to trial during mid-February 2013. The prosecution called Isom, Boyd, Barnes, and Detective Watson as witnesses. Ramer did not call any witnesses or present any defense. As previously mentioned, the jury found Ramer guilty, and the circuit court sentenced Ramer as a habitual

3

offender to seven years in the custody of the MDOC. Ramer appeals.

## ANALYSIS

### I. OPINION TESTIMONY

¶7. Ramer claims the circuit court erred when it allowed Isom, Barnes, and Boyd to testify that shoe prints behind Isom's shop – particularly four distinctive circles in the shoe prints – looked the same as the bottom of Ramer's shoes. According to Ramer, their testimony was inadmissible because they were not expert witnesses. We are mindful that "[t]he admission and exclusion of evidence is left to the discretion of the [circuit] court." *White v. State*, 976 So. 2d 415, 417 (¶11) (Miss. Ct. App. 2008) (citing *Stewart v. State*, 881 So. 2d 919, 924 (¶17) (Miss. Ct. App. 2004)).

¶8. Rule 701 of the Mississippi Rules of Evidence allows a lay witness to give opinion testimony in certain limited circumstances. Under Rule 701, if the witness is not testifying as an expert witness, his "testimony in the form of opinions or inferences is limited to those opinions or inferences [that] are . . . rationally based on [his] perception, [and] helpful to the clear understanding of [his] testimony or the determination of a fact in issue." Additionally, Rule 701 requires that the witness's testimony must not be "based on scientific, technical, or other specialized knowledge . . . ." In *Smith v. State*, 725 So. 2d 922, 925 (¶6) (Miss. Ct. App. 1998), this Court was confronted with a similar issue. A trial court had allowed a police officer to testify that a shoe print on a door to the back of a victim's house had the same pattern as a pair of shoes that he saw at a defendant's house. *Id*. at (¶7). This Court held that the officer's testimony was admissible under Rule 701. *Id*. at 925-26 (¶7). This Court reasoned that the officer's "observations concerning the shoe print patterns did not

4

require any specialized knowledge to assist the trier of fact." *Id*. at 926 (¶7). Furthermore, the officer's "testimony was nothing more than his first-hand observation, [which was] rationally based on his personal perceptions." *Id*. Finally, the officer's "opinion was also helpful to the jury in resolving the important factual issue of whether [the defendant] was the person who kicked in the victim's back door." *Id*.

¶9. According to Ramer, Isom's testimony was not based on his personal or firsthand observation. Ramer argues that "Isom . . . 'analyzed' . . . Ramer's tennis shoe and the 'shoeprint' he alleged was found out back of his store." Ramer further notes Isom's testimony that the shoe print was fresh. Ramer reasons that "[t]hose opinions would necessarily involve some form of forensic technical analysis, which . . . requires 'specialized knowledge,' is highly methodological, and [is] not simply based on some alleged personal observation." We find that the circuit court did not abuse its discretion when it allowed Isom's testimony. There was a distinctive and identifiable large four-circle pattern on the bottom of Ramer's shoes. The circuit court could have reasonably concluded that Isom was able to recognize the distinctive pattern without having any scientific, technical, or specialized knowledge. Consequently, this issue has no merit.

## II. SUFFICIENCY OF THE EVIDENCE

¶10. Next, Ramer claims there was insufficient evidence to convict him of burglary. According to Ramer, there was insufficient evidence that he entered the store through the hole in the wall. Ramer notes that the hole was approximately eight feet above the ground outside of Isom's shop. Ramer further notes that he is approximately five feet, four inches tall. Ramer also draws our attention to the fact that Detective Watson admitted that there was

5

no direct evidence that the hole in Isom's shop was the point of entry. Finally, Ramer notes that no forensic evidence connected him to the burglary of Isom's shop.

¶11.    "[When] considering whether the evidence is sufficient to sustain a conviction[,] . . . the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citations and internal quotation marks omitted). The evidence is viewed in favor of the prosecution. *Id*. Should the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," we must reverse and render the conviction. *Id*. (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶12.    Ramer was charged with burglary under Mississippi Code Annotated section 97-17-33 (Supp. 2013). "The crime of burglary consists of the breaking and entering the premises with the intention of committing a theft once inside." *Henderson v. State*, 756 So. 2d 811, 813 (¶8) (Miss. Ct. App. 2000). "The slightest physical entry into the previously secure enclosure is sufficient to satisfy the 'entering' component of a burglary." *Id*. at 814 (¶8). It was not necessary for the prosecution to present direct evidence that Ramer crawled through the hole in Isom's shop. The jury could infer that Ramer used some means to gain access to the necessary height for him to access the hole in the shop. Furthermore, there was evidence that Ramer could crawl into the hole in the shop. Ramer was approximately five feet, four inches tall, and he weighed 110 pounds at the time of the trial. Additionally, the circuit court instructed the jury that it could find Ramer guilty based on circumstantial evidence. "It is

within the jury's province to draw reasonable inferences from the evidence based on their experience and common sense." *Terry v. State*, 126 So. 3d 946, 949 (¶11) (Miss. Ct. App. 2013) (quoting *Arbuckle v. State*, 894 So. 3d 619, 623 (¶21) (Miss. Ct. App. 2004)).

¶13. Detective Watson testified that pieces of wood had covered a hole to Isom's shop that apparently had once been the location of an air-conditioning unit. Detective Watson further testified that pieces of wood were on the floor inside Isom's shop. Detective Watson also testified that someone had unsuccessfully attempted to pry open the back door to Isom's shop. According to Detective Watson, "There w[ere] pry marks on the outside [of the door, and t]here w[ere] a few little paint chips on the inside of the door on the carpe[t]." Isom testified that when he first encountered Ramer the next morning, Ramer was near a crowbar that had paint chips on it that matched the paint from the back door to the shop. The prosecution introduced a picture of the crowbar with paint chips on it, and paint chips that were near the back door to the shop. Viewed in the light most favorable to the prosecution, the jury could find that Ramer unsuccessfully tried to pry open the back door to Isom's shop. The jury could also find that Ramer then pried off the wood that covered the small opening to Isom's shop. Furthermore, the jury heard Isom's testimony that merchandise was missing from his shop, and Ramer had said that he wanted the missing merchandise. We find no merit to this issue.

### III. WEIGHT OF THE EVIDENCE

¶14. Finally, Ramer claims that the jury's verdict is contrary to the overwhelming weight of the evidence. When examining the weight of the evidence, we "will only disturb the verdict when it so contrary to the overwhelming weight of the evidence that to allow it to

7

stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). The evidence is weighed in the light most favorable to the verdict. *Id*.

¶15.    In the previous issue, we discussed the evidence against Ramer. Viewing the evidence in the light most favorable to the verdict, we find that it does not sanction an unconscionable injustice to allow Ramer's conviction to stand. There is no merit to this issue.

¶16.    **THE JUDGMENT OF THE TIPPAH COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY AND SENTENCE, AS A HABITUAL OFFENDER, OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO TIPPAH COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**