## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2015-KA-00924-COA

**CORNELL STUBBS A/K/A CORNELL LELAND
STUBBS A/K/A CORNELL L. STUBBS**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/03/2015 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN A. SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF BURGLARY OF A NONDWELLING AND SENTENCED AS A HABITUAL OFFENDER TO SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PROBATION, PAROLE, OR EARLY RELEASE |
| DISPOSITION: | AFFIRMED: 05/23/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Cornell Stubbs appeals his conviction of burglary of a storage shed.  We find no error

and affirm.

FACTS AND PROCEDURAL HISTORY

¶2.    Stubbs and Jonathan Holmes were indicted on the charge of burglary of a building

other than a dwelling pursuant to Mississippi Code Annotated section 97-17-33 (Supp. 2013). The indictment was subsequently amended to charge Stubbs as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2014). The State of Mississippi proceeded to trial against Stubbs. At the conclusion of voir dire, Stubbs advised the circuit court that he no longer wanted his attorney to represent him. Following instructions from the circuit court, Stubbs waived his right to counsel and proceeded to trial self-represented. The circuit court ordered Stubbs's trial counsel to remain present to assist, if necessary.

¶3. At trial, the victim, Williams Jones, testified that he was in his yard when he heard a loud pop come from the direction of his storage shed. Although there was a fence between Jones and the shed, Jones stated he could see that the top of the door to the shed was open. Jones looked over the fence and saw a truck backed up to the shed and two men standing at the entrance of the shed. The two men were later identified as Stubbs and Holmes. Jones stated he saw Stubbs and Holmes grabbing stuff from inside the shed. When Jones asked them what they were doing, Stubbs responded that "John Smith" had given them permission to enter the shed and take the property. Jones then called 911. Stubbs and Holmes subsequently left in the truck. Shortly thereafter, they were stopped by law enforcement.

¶4. Sergeant Clint Breland located the truck approximately two to three blocks from Jones's residence. Breland testified that Stubbs was driving the truck and Holmes was in the passenger seat. After Breland initiated the traffic stop, he observed a pair of bolt cutters, a broken lock, and a measuring wheel in the back of the truck.

¶5. Detective Tyson Fairley, the lead investigator on the case, responded to the scene.

Fairley collected into evidence a large industrial-size bolt cutter, a damaged lock, and a road-measuring tool, which were found in the back of the subject truck. Fairley subsequently interviewed Stubbs. During the interview, Stubbs admitted to cutting and/or assisting in cutting the lock. When Fairley asked Stubbs to give him a description of John Smith, Stubbs was unable to describe Smith, other than to say that Smith was about the same height as Stubbs.[1] Additionally, Stubbs's description of the vehicle that Smith was driving changed throughout the interview. In the beginning of the interview, Stubbs advised that Smith was driving a truck, but later described Smith's vehicle as a van. Fairley stated that the measuring wheel was determined to be Jones's property and was ultimately returned to Jones.

¶6. In support of his defense, Stubbs called Jonathan Magee and Holmes as witnesses.[2] Magee testified that the night before their arrest, Stubbs and Holmes were at his house working on a remodeling project. Magee gave Stubbs "a draw on the job" in the amount of $800. After Stubbs and Holmes left his house that night, Magee did not hear from them again. A couple of days later, Magee learned that Stubbs and Holmes had been arrested. As a result, Magee posted bail for Stubbs and Holmes. Stubbs and Holmes then finished the job at Magee's house. Magee testified that Stubbs and Holmes had worked at his house alone numerous times and had never stolen anything. On cross-examination, Magee acknowledged that he was not with Stubbs or Holmes on the day of the alleged burglary and did not know

_____

[1] Stubbs was unable to advise Fairley of Smith's race, age, hair color, or whether Smith had a beard, mustache, or any other physical attribute.

[2] The record shows that Holmes, the codefendant, was represented by counsel and had been advised of his rights and the potential dangers of testifying on behalf of Stubbs. Despite this, Holmes elected to testify.

what Stubbs or Holmes did that day.

¶7. Holmes testified that on the morning of the incident, he and Stubbs were driving in their truck and saw a man, later identified as John Smith, in front of a storage shed who looked like he was struggling. Holmes asked Smith if he needed help, to which Smith replied, "yeah, man, I need some help." As a result, Holmes got out of the truck, and Stubbs backed up the truck to the shed, popped the lock, and opened the door to the shed. As the door opened, a measuring wheel fell out of the shed. According to Holmes, Smith said they could take the measuring wheel. Stubbs then picked up the measuring wheel and threw it in the back of the truck.

¶8. Holmes stated that Smith subsequently left to get his truck and trailer. Approximately thirty-five seconds later, Jones came out and asked Holmes and Stubbs what they were doing. Stubbs explained to Jones that it was a mistake, and that he would pay for the broken lock. Stubbs attempted to explain to Jones that Smith would be right back. However, Jones interrupted Stubbs and advised that he was "going to [his] gate" and would "be back." Stubbs decided not to wait for Jones to come back, and he and Holmes left in their truck.

¶9. On cross-examination, Holmes described Smith as a thirty-eight- to thirty-nine-year-old Caucasian, who was about six feet tall, with a beard. Holmes stated Smith was driving a car, not a truck, but could not recall the color of the car. On redirect, Holmes changed his testimony and stated that Stubbs did not pop the lock, nor did Stubbs go near the shed other than to look in it. Additionally, Holmes claimed that Stubbs did not steal anything from the shed.

¶10. Stubbs was found guilty of burglary and sentenced, as a habitual offender, to serve seven years in the custody of the Mississippi Department of Corrections. Stubbs filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which the circuit court denied. Stubbs now appeals and argues: (1) the verdict was against the overwhelming weight of the evidence, (2) the circuit court erroneously failed to continue the trial after he fired his counsel, and (3) he was denied his fundamental right to a preliminary hearing.

ANALYSIS

*I.     The Weight of the Evidence*

¶11. Stubbs first argues the verdict was against the overwhelming weight of the evidence and, as a result, he is entitled to a new trial. Stubbs does not explain how the verdict was against the overwhelming weight of the evidence, nor does he cite any authority in support of his position, other than this Court's standard of review. Instead, Stubbs simply argues that when one looks at the facts as presented, "[his] story seems plausible." We disagree and find the evidence supports the verdict.

¶12. "When reviewing a denial of a motion for [a] new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). The evidence is weighed in the light most favorable to the verdict. *Id*.

¶13. Burglary of a nondwelling consists of the breaking and entering of a building, in

5

which any goods, merchandise, equipment, or valuable thing is kept for use, sale, deposit, or transportation, with the intent to steal therein, or to commit any felony. *Gales v. State*, 131 So. 3d 1238, 1240 (¶9) (Miss. Ct. App. 2013) (citing Miss. Code Ann. § 97-17-33(1)). "The slightest physical entry into the previously secure enclosure is sufficient to satisfy the 'entering' component of a burglary." *Ramer v. State*, 156 So. 3d 919, 923 (¶12) (Miss. Ct. App. 2014) (quoting *Henderson v. State*, 756 So. 2d 811, 813 (¶8) (Miss. Ct. App. 2000)).

¶14. The testimony shows Stubbs popped the lock to the shed using bolt cutters, opened the door to the shed, picked up the measuring wheel that had fallen out of the shed, and put the measuring wheel in his truck. The measuring wheel and the damaged lock, both of which were owned by Jones, were found in Stubbs's truck.

¶15. Although Holmes testified that he and Stubbs were simply helping Smith, and had permission from Smith to take the measuring wheel from the shed, the jury rejected this testimony. "[T]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." *Lewis v. State*, 110 So. 3d 814, 817 (¶7) (Miss. Ct. App. 2013) (quoting *Meshell v. State*, 506 So. 2d 989, 992 (Miss. 1987)). The jury heard testimony from Jones and Holmes, and therefore heard both versions of the story. Although Stubbs claims his story is plausible, the jury determined otherwise.

¶16. Having considered the evidence, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. Accordingly, we find the circuit court's denial of Stubbs's motion for a new trial was proper.

## II. Trial Continuance

¶17. Stubbs next argues he was "forced" to go to trial after terminating his counsel. Stubbs claims the circuit court should have continued the trial. We find this assignment of error is procedurally barred.

¶18. Stubbs failed to provide authority and support for this assignment of error. "It is the duty of an appellant to provide authority and support of an assignment of error." *Wilcher v. State*, 863 So. 2d 776, 811 (¶102) (Miss. 2003). Because Stubbs has failed to provide authority to support his assignment of error, this issue is procedurally barred. *Id*.

¶19. Procedural bar notwithstanding, we find Stubbs's claim fails. According to Stubbs, his attorney "did not adequately respect his wishes to have certain witnesses present to aid in his defense." However, the record shows Stubbs's witnesses were present and testified on his behalf. Thus, Stubbs was allowed to put on evidence in support of his defense. Importantly, Stubbs never moved for a continuance. Instead, as acknowledged by Stubbs in his brief to this Court, Stubbs "insisted on representing himself."

¶20. "The decision to grant or deny a continuance is left to the sound discretion of the [circuit] court." *Moore v. State*, 873 So. 2d 129, 131 (¶8) (Miss. Ct. App. 2004). While a defendant has the right to counsel, "the right to choose counsel is not absolute" and "must not be abused or manipulated in such a way as to 'thwart the progress of a trial.'" *Id.* at (¶10).

¶21. Upon review, we find no abuse of discretion in the circuit court's failure to continue the trial.

### III. Preliminary Hearing

¶22. In his pro se supplemental brief, Stubbs argues his "fundamental constitutional right to a serious preliminary hearing" was denied. Stubbs claims his attorney forged Stubbs's name on the waiver of preliminary hearing, which "hindered his right to present a defense in calling witnesses in his favor." Stubbs asserts that pursuant to "Rules 1.04 and 1.07," he could have produced and cross-examined certain witnesses during his preliminary hearing to show that no probable cause existed for his arrest.

¶23. We find no support for Stubbs's claim that his signature was forged. Moreover, the authority upon which Stubbs relies has been superceded.

¶24. The purpose of a preliminary hearing is to determine probable cause and the conditions for release, if any. URCCC 6.04. If from the evidence it appears that there is probable cause to believe that an offense has been committed, and that the defendant committed it, the defendant is bound over to await action of the grand jury. *Id*. If no probable cause exists, the defendant is discharged from custody. *Id*.

¶25. In support of his claim, Stubbs relies on Uniform Criminal Rules of Circuit Court Practice 1.04 and 1.07. Under Rules 1.04 and 1.07, at the preliminary hearing, a defendant was allowed to produce witnesses on his behalf and to cross-examine witnesses against him. However, on May 1, 1995, Uniform Criminal Rules of Circuit Court Practice 1.04 and 1.07 were superceded by Uniform Rules of Circuit and County Court 6.04 and 6.05. Pursuant to Rules 6.04 and 6.05, a defendant no longer has the right to call or cross-examine witnesses during the preliminary hearing.

¶26.    Had a preliminary hearing occurred, Rules 6.04 and 6.05 would have applied.  Thus, Stubbs would not have had the right to call and/or cross-examine witnesses at the preliminary hearing.  Accordingly, Stubbs's claim of a "hindered" defense is without merit.

¶27.    We find Stubbs's claim fails as there is no evidence of forgery, and Rules 6.04 and 6.05 control.

¶28.    **THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A NONDWELLING AND SENTENCE AS A HABITUAL OFFENDER OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PROBATION, PAROLE, OR EARLY RELEASE, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**